ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS V. McINTOSH & CARLISLE.

Decided March 11, 1910.

**1.—Railway—Fire—Evidence—Common Knowledge.**

Since locomotive engines often burn oil instead of wood or coal, it can not now be taken as a matter of common knowledge, if it ever was, that all such engines emit sparks capable of setting fire to adjoining buildings, nor to what distance dangerous sparks can be carried from them.

**2.—Same.**

In the absence of proof that a locomotive passing a house sixty-five or seventy feet from the track half an hour or more before fire was discovered therein emitted sparks in its operation, or of the character of fuel used in the engine, its mere passage and the subsequent discovery of the fire were insufficient to support an inference that such fire was communicated from the engine.

**3.—Inferential Proof.**

It is not permissible to base one inference upon another.

Appeal from the District Court of Upshur County. Tried below before Hon. R. W. Simpson.

*E. B. Perkins, Marsh & McIlwaine* and *J. S. McIlwaine,* for appellant.—The facts proven were insufficient upon which to base a presumption that the fire was set out by defendant's engine. International & G. N. Ry. Co. v. Timmerman, 61 Texas, 660; Gulf, C. & S. F. Ry. Co. v. Meentzen Bros., 52 Texas Civ. App., 416; Sheldon v. Hudson River Ry. Co., 67 Am. Dec., 155.

*Maberry & Maberry* and *Warren & Briggs,* for appellee.—It is sufficient if all the facts and circumstances in evidence fairly warrant the conclusion that the fire did not originate from some other cause. Gulf, C. & S. F. Ry. Co. v. Blakeney, 48 Texas Civ. App., 443; St. Louis, I. M. & S. Ry. Co. v. Coombs, 88 S. W., 595; St. Louis, I. M. & S. Ry. Co. v. Dawson, 92 S. W., 27; Monte Ne Ry. Co. v. Phillips, 96 S. W., 1060.

WILLSON, Chief Justice.—The appeal is from a judgment in favor of appellees, plaintiffs below, against appellant for the sum of $1425, as the damages suffered by the former as the result, as alleged, of the destruction by fire negligently set by the latter, of a stock of general merchandise and of a building in which same were situated.

The only question made by the assignments is one as to the sufficiency of the evidence to support the verdict and judgment.

Appellees were merchants and owned a wooden building ten or twelve years old, having a gable-shaped roof covered with shingles, and fronting southeast towards appellant's line of railway in the town of Pritchett. The building was on the slant of a hill, and the front part of it was elevated to a height of about three feet above the ground. It was within sixty-five or seventy feet of the center of the track of appellant's line of railway. The postoffice was kept in the building, and appellees had in it a stock of general merchandise. Between 12 and 1 o'clock on Sunday night, May 31, 1908, the roof of the building near the comb thereof and near cleats or teeboards left thereon in shingling it, was discovered to be burning, and before the fire could be controlled it destroyed the building, its contents, and several other buildings near to it. From a point south on its line of railway to a point north thereon about opposite said building, appellant's line of railway was "up grade." About one-half or three-quarters of an hour before the building was discovered to be on fire, one of appellant's trains going north passed along the track in front of said building. The locomotive pulling the train was moving slowly and exhausting steam. At the time when the building was discovered to be afire, the wind was blowing gently from the southeast, that is, from across the railroad track and towards said building. The building had a front and a back door. The front door was closed when citizens of the town, in response to an alarm given, reached the scene of the fire. Whether the back door was then open or closed was not shown by the testimony. There were two keys to the doors of the building. The postmaster, L. L. Johnson, carried one of them. The other at times was carried by one or the other of the appellees, and at other times by their clerk, Alex Maberry, or by appellee McIntosh's son, Delbert. Appellee McIntosh during several days before the fire occurred had been sick and had not been in or about the building. Appellee Carlisle and his clerk, Maberry, had not been in it since the Saturday night before it burned on Sunday night. Delbert McIntosh was in the building at an hour not shown by the testimony on the Sunday afternoon before the fire occurred, and so far as the testimony shows to the contrary he was the person last in it before it was destroyed. Carlisle testified that there was a stove in the storeroom, but that there was not on the Saturday night before the fire, and had not been for some time previous thereto, any fire in it. Delbert McIntosh did not state whether there was any fire in the stove when he was in the building on said Sunday afternoon or not. Johnson, the postmaster, did not testify on the trial, and it was not shown when he was last in the building. It was shown that shotgun cartridges formed a part of the stock of goods. Appellant's witness West testi-

fied that at the time the fire occurred he lived in a house situated about seventy-five yards from the building in question and nearly opposite to and across the railroad from it; that he was aroused from sleep on the night the fire occurred by a noise he at the time thought was made by a "horse kicking a stable," but which he afterwards concluded was made by the explosion of shells; that he looked from a window in the room where he was sleeping, and saw what he at the time supposed to be cinders left by a locomotive burning on the railroad track, but which he soon afterwards discovered to be fire burning "back up under plaintiffs' store." The witness testified that he at once gave an alarm and went to the burning building, and thought he was the first person to get to the fire. He further testified that when he first saw the fire under the house there was no fire on the roof of the building. West's testimony was corroborated by that of his daughter, who also testified that she saw fire up under the building.

There was no evidence showing that locomotive engines in generating steam emitted sparks of fire, nor, if they did, that sparks emitted by them were ever carried by the wind a distance of sixty-five or seventy feet. Therefore, unless it should be said that it was a matter of such common knowledge as to dispense with proof thereof, that such engines did emit such sparks and that same were sometimes carried such a distance, appellant's contention that the evidence was not sufficient to support the verdict and judgment must be sustained. In Sheldon v. Hudson River R. R. Co., 14 N. Y., 218, 67 Am. Dec., 159, it was expressly held that "the jury can not take judicial cognizance of the fact that locomotive engines do emit sparks and cinders which may be borne a given distance by the wind." The rule so announced, we think, is a reasonable and safe one; especially so, in view of the fact that oil now is sometimes used as a fuel to generate steam in such engines, and in view of the further fact that it can not be said to be a matter of common knowledge, if true at all, that engines in exhausting steam made by oil as a fuel emit sparks of fire. Had it been shown that the locomotive referred to by the witnesses was an oil-burning one, certainly it could not be said that the jury, in the absence of evidence showing that oil-burning engines sometimes emitted sparks of fire which were carried such a distance, might have found that the building was set on fire by sparks from such locomotive. Yet, for aught appearing to the contrary in the record, the locomotive in question may have been burning oil on the occasion when it pulled the train by appellees' building.

The conclusion reached by us is not in conflict with Gulf, C. & S. F. Ry. Co. v. Blakeney-Stevens-Jackson Co., 106 S. W., 1142, cited by appellees. In that case it was shown that the locomotive burned coal, and within a few weeks before the time of the fire had been seen to emit sparks of fire which had been carried by the wind a greater distance than the distance they needed on the occasion then in question to have been carried to set the fire complained of. St. Louis, I. M. & S. Ry. Co. v. Coombs, 88 S. W., 595; St. Louis, I. M. & S. Ry. Co. v. Dawson, 92 S. W., 27, and Monte Ne Ry. Co. v. Phillips, 96 S. W., 1060, also cited by appellees, and other cases

decided by the Supreme Court of Arkansas, not cited by them, seem to sustain their contention that evidence showing property to have been discovered to be on fire within a short time after a locomotive passed near it, and indicating no other source from which it might have been communicated, is sufficient to support a finding that the fire was communicated to the property by sparks from the engine. We do not agree that the rule as recognized by that court is a sound one. If it could have been said a few years since, when wood and coal exclusively were used as a fuel in generating steam in locomotive engines, that it was a matter of common knowledge that all locomotives emitted sparks of fire in generating steam, we very much doubt if it ever properly could have been said that it was a matter of common knowledge that such sparks when so emitted ever were carried by the wind alive a given distance (7 Enc. Ev., p. 892; Harper Furniture Co. v. Express Co., 57 S. E., 458; Chicago, St. L. & P. Ry. Co. v. Champion, 32 N. E., 874) ; and we are sure it should not be said now that steam in locomotives not infrequently is generated by the use of oil as a fuel, that it is a matter of common knowledge that all locomotive engines now in use emit sparks of fire, and that sparks, if emitted by them, are ever carried by the wind alive a given distance. Therefore, we think the ruling of the Arkansas court can not be justified on the ground that jurors should be held to judicially know such matters. The ruling of that court must, therefore, we think, be justified, if it can be, upon the ground that it was permissible for the jury to infer as a fact that the fire was communicated by the locomotive, from the circumstances that there was fire in the locomotive, that the property was discovered afire shortly after the locomotive passed near to it, and the absence of any other obvious source from which the fire could have been communicated to the property. But to infer such a fact from such circumstances involves, it seems to us, a violation of the well established rule that forbids the making of one inference or presumption the basis for another one. To find as a fact from the circumstances recited that the fire was communicated to the property by the locomotive the jury must have inferred that a spark was emitted from the locomotive; that the spark so emitted was carried to the property; that the spark was alive when it reached the property; and finally, that it set the property on fire. The inference that a spark was emitted from the locomotive might be referred to proof that there was fire in the locomotive; but the other inferences in the chain may not be referred to any of the circumstances proved, but necessarily must be referred to the inference that the spark escaped from the locomotive. Such is not the process by which the ultimate fact that fire was communicated to the property by a locomotive is found, when it is shown, directly or circumstantially, that the engine emitted sparks, that sparks so emitted sometimes were carried alive a given distance, and after being carried such a distance sometimes set on fire inflammable substances. With such evidence before them the jury could infer from the fact that the engine had been known to emit sparks, that it emitted them on the occasion in question; from the fact that sparks so emitted were sometimes carried alive a given

distance, that they were carried such a distance on such occasion; and from the fact that after being carried alive such a distance they sometimes set on fire inflammable substances, that they did so on the occasion in question.

Because the evidence was insufficient to support it, the judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*