For the reason stated, the judgment is reversed, and the cause remanded.

---

PAYNE, Agent, v. REYNOLDS. (No. 9749.)

(Court of Civil Appeals of Texas. Fort Worth. Feb. 18, 1922.)

1. Carriers ⟶105(2)—Not liable for delay in shipment unless notified by consignee that delay will cause special damages.

In an action by a consignee against a carrier for damage to cattle from delay in delivering cotton seed hulls, plaintiff could not recover where he had not notified the carrier, and there was nothing to inform the latter that delay would specially injure him.

2. Carriers ⟶186—Agent of initial carrier not bound to notify connecting carrier of special damage by delay.

Where cotton seed hulls needed for immediate feed for consignee's cattle were delayed in transit, the local agent of the initial carrier at the point of destination was not obliged to notify the connecting carrier that delay in shipment would specially damage the consignee.

3. Carriers ⟶185(3)—In suit for delay in shipment, evidence held not to sustain a judgment for plaintiff.

In an action against connecting carriers by a consignee for damages resulting from delay in shipment of cotton seed hulls needed for immediate feed for cattle, evidence *held* insufficient to sustain a judgment for plaintiff.

Appeal from Montague County Court; A. L. Scott, Judge.

Action by W. O. Reynolds against John Barton Payne, federal Agent, and others. From a judgment for plaintiff, defendant named appeals. Reversed and remanded.

Hunt & Callaway, of Montague, for appellant.

Thos. C. Tripp, of Fort Worth, for appellee.

CONNER, C. J. This suit was filed in the justice court of precinct No. 7, of Montague county, Tex., on the 24th day of June, 1920, against the Fort Worth & Denver City Railway Company, the Missouri, Kansas & Texas Railway Company of Texas, and John Barton Payne, federal Agent, to recover $150 as special damages to 20 head of steers, alleged to have been caused by a negligent de-

lay in the shipment and delivery of a car of cotton seed hulls from Quanah, Tex., to Nacona, Tex.

A trial in the justice court resulted in a judgment in appellee's favor against John Barton Payne, federal Agent, for the sum of $150, the other defendants being discharged by the judgment.

John Barton Payne prosecuted an appeal to the county court of Montague county, where, upon a trial de novo, judgment was rendered in appellee's favor for the sum of $100, from which judgment John Barton Payne has appealed to this court.

The evidence, as shown by the approved statement of facts, upon which the judgment rests, is so brief that we venture to set it out, to wit:

Appellee testified:

"On the 16th day of January, 1920, I ordered a carload of cotton seed hulls over the phone from the cotton seed oil company at Quanah, Tex., to be shipped to Nocona, Tex. The company answered that they would bill them out at once. The hulls did not arrive at Nocona till on February 13, 1921, 28 days after I ordered them. About a week after I ordered them I got T. B. Wilks, the M., K. & T. Railway agent at Nocona, to trace them. He said that the hulls were on the Fort Worth & Denver Railway at Wichita Falls and had not been delivered to the M., K. & T. Railway Company. It seems that the Katy claimed that the Denver would not deliver them, and the Denver claimed that the Katy would not receive them. I run out of hulls to feed my cattle on about a week after I ordered, and had to buy cake and meal, and they would not eat it good. I was out of hulls for about 21 days. There was 20 head of steers, and they were worth 10 cents per pound, and would have put on four pounds each during the 21 days if I had had the hulls to feed them. The feed I bought for them cost me $20 per ton more than the hulls would have cost. The hulls were all right when they did come and were not damaged. The damage that I am claiming is damage to the cattle for the want of said hulls. And I paid out somewhere about $60 more for feed than I would have spent had the hulls come on time, which I think I should recover."

T. B. Wilks testified for plaintiff as follows:

"I was agent for John Barton Payne, federal Agent, at Nocona during the time of the shipments of the hulls from Quanah to Nocona for plaintiff. The hulls were shipped on the Fort Worth & Denver City Railway to Wichita Falls, and from Wichita Falls over the M., K. & T. Railway to Nocona."

[1] In addition to the foregoing testimony, plaintiff offered a way bill or receipt signed by T. B. Wilks, which shows that the shipment was made from Quanah, Tex., on the "1—16—20," by the Quanah Oil Company. The information conveyed by the receipt is not otherwise material to any question presented here; it being confined to the car number, weights, charges, etc. Appellant insists that it was error to render judgment against him in that the evidence wholly fails to show that he had notice at the time of the execution of the shipping contract that the plaintiff would suffer any special damages in case the cotton seed hulls were delayed in transit. We are of the opinion that this contention must be upheld.

That special damages, such as shown in this case, for a carrier's delay in transportation, are not recoverable in cases where the carrier had no notice at the time of the contract of the special circumstances which might cause delay to be specially harmful, seems to be too well settled to require discussion. The rule is abundantly supported and illustrated in the cases of Hassler v. G. C. & S. F. Ry. Co. (Tex. Civ. App.) 142 S. W. 629, and Myrick v. Tolivar (Tex. Civ. App.) 227 S. W. 555, and cases therein cited, including the case of Railway Co. v. Belcher, 89 Tex. 429, 35 S. W. 6, by our Supreme Court.

There is nothing in the testimony, as shown by the statement of facts, that shows that the agent of appellant at Quanah, Tex., had any knowledge or notice of appellee's intended use of the cotton seed hulls. It was argued on submission that notice could be implied from the character of the commodity ordered and shipped; the contention being that cotton seed hulls, as a matter of common knowledge, were used only in the feeding of stock. It could perhaps have been reasonably inferred that the cotton seed hulls were intended for ultimate consumption by cattle, but nothing in the order of the appellee, as shown in this case, indicated or tended to show that the hulls were intended for immediate use. The shipping agent at Quanah could just as reasonably have inferred that the shipment was to a retail dealer in such commodities, rather than to a feeder. Moreover, the same character of feed was ordered in the cases of Bourland v. Railway Co., 99 Tex. 407, 90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647, and Railway Co. v. Belcher, 88 Tex. 549, 32 S. W. 518, and it was held that the agents at the shipping points had not been shown to have had notice of the special damages there sought, which were of like kind to the special damages claimed in this case.

Appellee has filed no brief, but in considering this case we examined the case of Bourland v. Railway Co., 99 Tex. 407, 90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647, to see whether appellee might be entitled to recover under the decision therein. In that case Bourland ordered cotton seed cake from Little Rock, Ark., to be fed to cattle near Washita, Okl. It was held that, while the agent of the railway company at the initial point of shipment was without notice of the purpose for which the cake was need-

ed, and of the damage to result from delay in delivering at Washita, nevertheless, inasmuch as there had been no délay in the transportation up to the time of its arrival at Washita, the failure of the railway company at Washita to promptly deliver the cotton seed cake after notice of the purpose for which it was desired and of the probable damage that would arise from failure to deliver authorized the judgment against the railway company. We think, however, there is a clear distinction between the Bourland Case and the one now before us. In the Bourland Case it was clearly shown that the railway agent at Washita was specifically informed of the purpose and need of the cotton seed cake after its arrival at Washita and when it was within his power to cause a prompt delivery in time to have avoided the damage shown, as was clearly the duty of the agent to so deliver. In the case before us, however, there is no evidence to show that the agent at Nocona failed in his duty to promptly deliver after it was within his power to do so.

[2] The statement of facts fails to show us when the car of cotton seed hulls in question was delivered by the Fort Worth & Denver City Railway Company to the Missouri, Kansas & Texas Railway Company at Wichita Fals, the junction point. Nor can we say, under the rule in the Belcher Case, that it was any part of the duty of the Nocona agent to notify the agent of the Fort Worth & Denver at Wichita Falls of the purpose for which the cotton seed hulls was desired and of the result of a failure to promptly forward, or even that any such notice was given to the agent at Wichita Falls.

[3] The cause of delay in the shipment does not appear from any legitimate evidence. It is true that in appellee's testimony he says:

"It seems that the Katy claimed that the Denver would not deliver them, and the Denver claimed that the Katy would not receive them."

This is evidently a mere conclusion of the appellee, deduced most probably from the statements of the Nocona agent at the time he was tracing the shipment, but the particular declarations of the agent, if any, authorizing such an inference is not given so as to afford any assurance to a judicial tribunal that the facts implied were true. It certainly cannot be said from appellee's testimony with that degree of certainty necessary to uphold a judgment that it was the Missouri, Kansas & Texas Railway instead of the Fort Worth & Denver Railway that was guilty of the delay in transportation, and it is still less certain that the agent of the appellant at Nocona was guilty of any failure to promptly deliver the cotton seed hulls after it was within his power to do so.

We conclude that the court erred, as assigned, in rendering a judgment for appellee upon the evidence presented.

The judgment will accordingly be reversed, and the cause remanded.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

