**KELLY v. SIMON et al.  (No. 7153.)**

(Court of Civil Appeals of Texas. San Antonio. April 30, 1924. Rehearing Denied May 22, 1924.)

1. Vendor and purchaser ⊂⇒351(9)—Measure of damages for breach of executory contract to convey land when vendor cannot make title stated.

For breach of an executory contract to convey real estate when vendor cannot make title, in the absence of fraud, purchaser can recover only nominal damages, with return of any purchase money paid with interest.

2. Vendor and purchaser ⊂⇒349 — Purchaser must allege and prove purpose to resell at enhanced value known to vendors to receive special damages.

Purchaser to receive special damages on vendor's inability to make title must allege and prove that it was purchaser's intention and purpose to resell the property at some enhanced value, known to vendors at time of making of contract.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by E. J. Kelly against U. M. Simon and others. Judgment for defendants, and plaintiff appeals. Affirmed.

E. E. Blake, of Oklahoma City, Okl., and Scott, Brelsford, Funderburk & Ferrell, of Eastland, for appellant.

W. A. Hanger, of Fort Worth, for appellees.

COBBS, J. This suit was brought by appellant to recover $34,000, from appellees, as damages growing out of an alleged breach of a contract of sale of an undivided one-eighth of one-eighth interest, in and to all of the oil, gas, and other minerals in, under, and that may be produced from, those certain described lands situated in Eastland county, and set out in the pleadings and the contract of sale.

The contract of sale, which is the basis of this suit, and which is necessary for an understanding of the real issues in the case, leaving out the formal portions and description of the lands, is as follows:

"The State of Texas, County of Eastland.

"This contract made and entered into this the 19th day of December, 1918, by and between U. M. Simon, of the county of Tarrant, state of Texas, hereinafter called seller (acting herein through his agents, McNeny & McNeny), and E. J. Kelly, of Jefferson county, Oklahoma, hereinafter called purchaser, witnesseth:

"That the seller hereby sells to purchaser and purchaser hereby purchases from seller, for the sum of thirty-three thousand five hundred ($33,-500.00) dollars, the following described property. An undivided one-eighth of one-eighth interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described land situated in Eastland county, and more particularly described as follows:

"536 acres of land, more or less, situated in said county, about six miles northeast of the town of Eastland, being known as the R. A. Madding tract and described by metes and bounds as follows:

"In four (4) tracts as follows: (A full description of the land follows in the contract but is omitted here.) * * *

"Said consideration to be paid as follows: Fifteen hundred dollars in cash upon the execution of this contract and the remainder to be paid in cash upon the execution and delivery of a general warranty deed in and to an undivided one-eighth of one-eighth interest in the oil, gas and mineral rights in the above-described land.

"It is understood and agreed that seller is to deliver to purchaser an authentic abstract showing good and merchantable title in seller to the land to be conveyed, subject to approval of purchaser's attorney, and should said abstract show good title in seller purchaser hereby agrees within fifteen days from the delivery of said abstract to pay the remainder of said purchase price in cash upon the execution and delivery of deed as aforesaid.

"But should said abstract not show good title in seller, seller is to have a reasonable time in which to perfect said title, which seller agrees to do with all due diligence, and purchaser agrees at the end of fifteen days to place the entire amount in the First National Bank of Fort Worth, Texas, in escrow to be delivered to sell-

er when seller has perfected title to satisfaction of purchaser's attorney.

"A copy of this contract, together with fifteen hundred dollars is this day deposited with the National Bank of Fort Worth, in escrow until the parties hereto have complied with the terms hereof, but it is distinctly understood that in event said purchaser fails to pay the remainder of said purchase price when title has been approved then the amount deposited herewith is to be delivered to the seller herein.

"Witness our hands in triplicate at Fort Worth, Texas, this the 18th day of December, 1918."

Appellant, in the petition, sought to recover damages, among other things, upon several distinct theories: First, damages to be measured by the difference in the contract price of the interest sold, and the market value of such interest at the date of the alleged breach of the contract of sale. Second, special damages, being the difference in the contract price and the price at which plaintiff had an opportunity to resell the same, with notice to defendants of such opportunity. Third, special damages, for expenses of attorney's fees necessary in examining the title to the interest contracted to be sold.

Appellees directed exceptions to all the allegations in plaintiff's pleading as the alleged basis for the recovery of damages, measured by the difference in the contract price and the market value at the time of the alleged breach, and further directed to allegations designed as the basis for the recovery of damages based on the difference in the contract price at which it is claimed plaintiff, with notice to defendants, before the breach, had opportunity to resell, and as to the nominal damages and attorney's fees.

The court sustained the exceptions to all allegations constituting the basis for claims for any damages, save and except the claim for nominal damages and attorney's fees incurred as expenses in examining the title.

Certain exceptions urged by appellant to portions of appellees' answer were overruled.

A jury being waived, the case was tried before the court, and a judgment was rendered against appellees for attorney's fees, for $400, but judgment in all other respects was for appellees.

The court made and filed findings of fact, and so much as is material for a better understanding of the case is here set out as follows:

"That at the time of the making of said contract, U. M. Simon had no title to any interest in the land described in the contract, except that by agreement between him and R. A. Madding and A. G. Fraser, said Simon succeed to the rights of said Fraser in the certain contract between him and the said R. A. Madding giving the said Fraser the right or option to acquire an interest in the land which was the thing, or the interest conveyed by Madding to Simon by deed dated December 19, 1918, the interest conveyed by said deed being one-fourth of the oil, gas and other minerals in the land described in the contract, subject to the terms and conditions of an oil and gas lease owned by Texas Pacific Coal & Oil Company, hereinafter mentioned; that said deed has not been delivered to said Simon up to the 18th day of January, 1919, but was held in escrow subject to the payment of about $53,000, the purchase price which Simon was ready, willing and able to pay and would have paid and procured delivery thereof had the plaintiff Kelly accepted the conveyance which Simon offered to make to him.

"That on the 7th day of January, 1919, abstracts were delivered and examined as provided in said contract, and plaintiff's attorneys objected to the title on the ground of a provision for the payment or delivery of the oil royalty in the lease which had theretofore been executed, covering said land and owned by the Texas & Pacific Coal & Oil Company, which was as follows: 'In the event of the sale or marketing of petroleum the lessees shall deliver as royalty to the lessors near the mouth of the well or wells without cost to the lessors one-eighth of such products or pay the market price thereof, in cash at the option of the lessees and the remainder of such products shall belong to the lessees.'

"That on the 18th day of January, 1919, defendant Simon offered to convey to plaintiff in fulfillment of the contract one-eighth of one-eighth of the oil, gas and other minerals in and under and that may be produced from the land described in the contract, with the provision that same was subject to the mineral lease on the land therein described in favor of the Texas & Pacific Coal & Oil Company, which conveyance plaintiff Kelly refused to accept because of the provision hereinabove quoted in the lease of the Texas & Pacific Coal & Oil Company.

"That defendant Simon, claiming that he had offered to do all that was required of him under the contract, announced that he would do nothing more, but at the same time expressing his willingness to do all he could to meet the objections to the title, but stating that he could do nothing more than make the proposed conveyance; that he would not undertake to procure any release of the provision because he knew he could not do so; in all of which the said Simon acted in good faith and free from fraud, and at the time of making said contract said Simon had no actual knowledge of the provision in the T. & P. Coal & Oil Company lease above quoted.

"That plaintiff Kelly reasonably expended in investigation and examination of the title the sum of $400 for attorney's fees for which he is entitled to recover."

The general idea prevailing in the rule for damages for injuries growing out of the breach of a contract for the sale of land is to give adequate compensation for the injury suffered, such as ordinarily will secure the difference between the contract price and the market value at the time of the breach, and this would be adequate compensation for the failure of the seller to convey good title to the interest contracted to be sold.

Much has been said by the parties here in regard to the English rule, and the rule that

prevails in Texas, for measuring damages for the breach of a contract to sell real estate when the owner had no title at the time of the contract, without any fraud, and where the breach results from an inability to convey by reason of a want of, or defect in, the title, which rule is subject to some exceptions.

The recognized English rule seems to have been first laid down in Flureau v. Thornhill, 2 W. Bl. 1078 (section 581, 2d Ed. Sutherland on Damages), as follows:

"Section 581. *English Rule When Not Applied.*—If the person selling is in fault; if he knew or should have known that he could not comply with his undertaking; if he, being an agent, contracted in his own name, depending on his principal to fulfill his contract merely because he had power to negotiate a sale; if he has only a contract of the owner to convey, or a bond for a deed; if his contract to sell requires the signature of a wife to bar an inchoate right of dower, or the consent of a third person to render his deed effectual; if he makes his contract without title in the expectation of subsequently being able to acquire it, and is unable to fulfill by reason of causes so known, as the want of concurrence of other persons; or if he has title and refuses to convey, or disables himself from doing so by conveyance to another person,—in all such cases he is beyond the reach of the principle of Flureau v. Thornhill and is liable to full compensatory damages, including those for the loss of the bargain. This rule applies where the grantor expressly agrees to make a good title."

A careful examination of the authorities in this state will show not one of the exceptions set out in the above quotation, and whenever urged as such, has been overruled; for the contention generally made was for damages measured by the value of the bargain without any attempt to bring the case within an exception to the rule.

The exception to the rule as stated, "where the grantor expressly agrees to make a good title," when he had no title, is not properly speaking an exception, but rather a case where the rule has no application. When the seller expressly binds himself, if the title is not good, to make it good, necessarily requires the application of a different measure of damages, for otherwise an express obligation in a contract for the sale and conveyance of real estate, to make the title good, if not good, would be wholly unenforceable. It would be folly to attempt to impose such additional obligation upon the seller if it does not itself impose a real legal obligation. Taylor v. Barnes et al., 69 N. Y. 430; Maupin on Marketable Titles to Real Estate, § 99; Hassard v. May (Tex. Civ. App.) 152 S. W. 665.

We are endeavoring to keep in mind the two distinct elements of damages often expressed in written contracts, expressly undertaking to perfect such defects as there may be in a title, a failure to do which will result in damages to the other party, in contradistinction to damages growing out of the breach of the contract without fraud, when the seller undertakes to sell property to which he had no title, and afterwards fails or refuses to perfect the title.

While the difference in principle is very narrow and shadowy, it is no longer an open question in this state, which seems to have followed or adopted the so-called English rule.

[1] The measure of damages for the breach of an executory contract to convey real estate when the seller cannot make title, in the absence of fraud, is the amount of the purchase money paid with interest. If no consideration has been paid, then only nominal damages may be recovered. Roberts v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 105; Clifton v. Charles, 53 Tex. Civ. App. 448, 116 S. W. 120; Dobson v. Zimmerman, 55 Tex. Civ. App. 394, 118 S. W. 238; Hahl v. West, 61 Tex. Civ. App. 431, 129 S. W. 876; Garcia v. Yzaguirre (Tex. Com. App.) 213 S. W. 236; Vaughn v. Farmers' Nat. Bank, 59 Tex. Civ. App. 380, 126 S. W. 692; 39 Cyc. 2105; Hall v. York, 22 Tex. 641; Sutton v. Page, 4 Tex. 142; Hamburger v. Thomas (Tex. Civ. App.) 118 S. W 770; Hollingsworth v. Mexia, 14 Tex. Civ. App. 363, 37 S. W. 455; Hall v. York, 16 Tex. 19; Wheeler v. Styles, 28 Tex. 240; Armstrong v. James (Tex. Civ. App.) 220 S. W. 420; Hammond v. Hannin, 21 Mich. 374, 4 Am. Rep. 490; Maupin on Marketable Title to Real Est. p. 228; First Sedgwich on Measure of Damages, 2105, 2106.

The contract sued upon required the furnishing of an abstract showing a marketable title subject to approval of appellant's attorneys, with reasonable time in which appellees were to perfect the title, which was agreed to be done with reasonable diligence. There was no covenant expressly requiring appellees to indemnify the appellant against the option clause in the prior lease to the T. & P. Coal & Oil Company, on the lands in controversy on account of which appellant refused to take appellees' title.

The contract in no respect imposed any express obligation absolutely to indemnify the appellant against the option clause of the T. & P. Coal & Oil Company lease, or to require a release thereof.

The facts in the case of Flureau v. Thornhill, 2 .Blackstone, 1078–96, Eng. Reprint, relied upon by both parties, are as follows:

"The plaintiff bought at auction the unexpired term of a lease for 270 pounds and paid a deposit of 54 pounds. The defendant could not make a good title, but offered to convey his title with all its faults or to give back the deposit with interest and costs. The plaintiff, however, claimed damages for the loss of his bargain, and also by reason of his having sold stocks to pay the purchase money, which stocks had since risen in value. The defendant gave evidence that the bargain was by no means ad-

vantageous. The jury gave 20 pounds damages, besides a new trial. Clearly the item of loss by sale of stocks could not have been recovered, and the admission of evidence to show such loss would have been an error which would by itself have required a new trial. Blackstone, J., in his opinion seemed to assume that the damages were given by the jury to compensate for that loss, in which case a new trial should have been ordered. The court, however, based their decision on the ground that the purchaser could not recover for his bargain. 3 Sedg. 2091."

In deciding the case Justice Blackstone used the following language:

"These contracts are merely upon condition frequently expressed, but always implied, that the vendor has a good title. If he has not, the return of the deposit with interest and costs is all that can be expected."

The rule in Texas is now well established, which means that parties must know that if the vendor has not good marketable title, the purchaser can only recover such sum of money as he has paid, with interest and nominal damages, unless fraud has been perpetrated. Sedgwick on Measure of Damages, vol. 3, p. 2104–2106.

Appellees were unable to deliver the marketable title because of the outstanding oil lease, but were willing and offered to convey such title as they had, which appellants refused to receive.

At the time of the contract appellees did not know of the oil lease. The court found no fraud was committed by appellees. While as said in Hall v. York, 22 Tex. 641: "Every man who sells land that does not belong to him, commits a fraud. But unless there be additional circumstances of fraud, and special damages resulting to the vendee, the measure of damages against such a vendor, would be only the purchase money and interest"—still, in this case, the trial court found as a fact that appellees were guilty of neither fraud nor bad faith of any kind in the matter. In the case of Garcia v. Yzaguirre, 213 S. W. 236, the Commission of Appeals said:

"From these authorities it seems to be the settled law in this state that a vendee who contracts to purchase land from one who has no title can, in the absence of fraud, recover only the amount paid on the contract, if any, and such special damages, not including the loss of his bargain, as he may allege and prove.

"In this case both parties at the time the contract was made knew the condition of the title, and knew that Eduardo Yzaguirre in fact had no title, and there was neither allegation nor proof that Eduardo Yzaguirre was guilty of any fraud which induced the making of the contract. We, therefore, hold that Garcia was not entitled to recover anything against Eduardo Yzaguirre." Roberts v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 105; Hammond v. Hannin, 21 Mich. 374, 4 Am. Rep. 490, Opinion by Mr. Justice Cooley.

Appellant did not refuse to take the property because record title was not in Simon, appellee, but because there existed the said oil lease, containing a clause giving the lessee the right to deliver the oil or the value thereof.

Appellant contends that he is entitled to recover the profits he might have made from a resale of the property. There is no merit in this contention, for there is neither allegation nor proof of fraud inducing the contract, and it is not pretended at the time the contract was made that such special damages might probably accrue. Appellant received a proposition from Jake L. Hamon to purchase the property a few days after the contract was made, which was communicated to appellees but subsequent to the date of the contract.

It is not pretended that appellees were apprised at the time of purchase, that appellant was purchasing for the purpose and intention to resell the property before or at the time of the contract for a profit. There is nothing to show special damages were within the contemplation of the parties at the time of making the contract.

[2] In such cases, to recover special damages, it must be alleged and proven that it was the purpose and intention of the appellant to resell the property at some enhanced value, known to appellees at the time of making the contract. Haddock v. Taylor, 74 Tex. 216, 11 S. W. 1093; Railway v. Wright, 15 Tex. Civ. App. 151, 38 S. W. 836; M., K. & T. Ry. Co. v. Belcher, 89 Tex. 428, 35 S. W. 6; Payne v. Reynolds (Tex. Civ. App.) 239 S. W. 985; Amer. Exp. Co. v. Bean (Tex. Civ. App.) 233 S. W. 561; City of Brownsville v. Tumlinson (Tex. Civ. App.) 179 S. W. 1107; Hammond v. Hannin, 21 Mich. 374, 4 Am. Rep. 490; Hall v. York, 22 Tex. 641.

The request of appellees that this court reform the judgment of the trial court so as to eliminate from the judgment the $400 recovered by appellant for attorney's fees is refused.

Having carefully considered all the assignments and propositions of appellant, and finding no error assigned that requires a reversal, the judgment is affirmed.