# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00089-CV

---

**Langston B. Williams Jr. and Magnolia Christian Church, Appellants**

**v.**

**Rex Bowers, Appellee**

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-004835, THE HONORABLE LAURIE EISERLOH, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellants, Magnolia Christian Church and Langston B. Williams, Jr., appeal from the district court's final judgment awarding specific performance of contracts for the sale of real property to Rex Bowers. In two issues, Appellants argue that the final judgment should be reversed because (1) Bowers's breach-of-contract claim is barred by limitations and (2) it was error to award specific performance for a variety of additional reasons. We will affirm.

## BACKGROUND

Magnolia Christian Church is a church in San Antonio, Texas. Langston Williams is the Church's pastor. Although they are based in San Antonio, Appellants own real property on East 12th Street in the McKinley Heights neighborhood of Austin, Texas. Specifically, they own land and improvements at 3000 East 12th Street, 3002—3004 East 12th

Street, and 3008 East 12th Street (the Properties). In 2012, Appellants listed the Properties for sale, and they eventually received offers from an Austin-based real-estate investor, Rex Bowers.

In March 2013, the parties executed three form contracts for the sale of the Properties for a total price of $434,500.00 (the Contracts).[1] Each contract made the closing of the subject transaction contingent on the closing of the other transactions. The Contracts include four provisions relevant to this appeal.

First, there is Paragraph 6A, entitled "Title Policy," which required Appellants to buy title insurance to protect Bowers against losses from defects in title and confirm their right to sell the Properties. Paragraph 6A provides in relevant part:

> Seller shall furnish to Buyer at Seller's expense an owner policy of title insurance (Title Policy) issued by Independence Title (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and [eight standard listed] exceptions.

Second, there is Paragraph 6D, entitled "Objections," which permitted Bowers to object to certain title and survey issues and required Appellants to cure such objections if certain requirements were met. Paragraph 6D provides:

> Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than [the first seven standard exceptions listed in Paragraph 6A]; disclosed in the Commitment other than [the eight standard exceptions listed in Paragraph 6A]; or which prohibit the following use or activity: [LEFT BLANK]. Buyer must object the earlier of (i) the Closing Date or (ii) [LEFT BLANK] days after Buyer receives the Commitment, Exceptions Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver

---

[1] Specifically, the Church and Williams agreed to sell and Bowers agreed to buy (1) 3000 East 12th Street for $50,000.00, (2) 3002—3004 East 12th Street for $230,000.00, and (3) at 3008 East 12th Street for $154,500.00.

of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

Third, there is Paragraph 9A, entitled "Closing," which scheduled the Closing Date and granted each party the right to exercise certain remedies in the event the other party failed to close. Paragraph 9A provides:

The closing of the sale will be on or before March 29, 2013, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

Fourth and finally, there is Paragraph 15, entitled "Default," which granted Bowers the right to either enforce specific performance or terminate the Contracts in the event Appellants failed to perform. Paragraph 15 provides as relevant here:

If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

After the parties went under contract, the title company issued an initial commitment. Schedule C listed various items that needed to be cleared in order to close, including a pending but dormant lawsuit between Appellants and a third party over ownership of the Properties. Appellants represented that they lacked funds to hire an attorney to move to dismiss the lawsuit. The parties attempted to devise some solution to the issue and appeared to

3

reach an impasse. But then the trial court dismissed the lawsuit on its own initiative, thereby clearing the item for closing.

The title company then issued another commitment. Schedule C again listed various items that needed to be cleared in order to close, including a resolution from the Church's Board authorizing Williams to act on its behalf. Notably, the Board consisted of Williams's wife, Williams's son, and Williams himself. Nevertheless, Williams represented that he was unable to obtain the required resolution. Appellants then purported to terminate the Contracts and proceeded to execute new contracts with a different buyer for a significantly higher purchase price.

But Bowers insisted that the Contracts remained valid and enforceable. The title company set up several additional closings, and each time Bowers attended, but Appellants did not. In July 2016, Bowers again appeared at a closing, signed all necessary closing documents, and delivered the funds for the closing ($434,500.00) through a wire transfer. The escrow officer of the title company, Carol Bellomy, notified Appellants that Bowers had completed the signing of the closing documents and that the lender had delivered the funds. However, again Appellants did not appear at the closing, failed to provide title insurance, and never executed or delivered a general warranty deed conveying title to the Properties as required by the Contracts.

## PROCEDURAL HISTORY

### *The County Court Lawsuit*

On August 30, 2016, Bowers sued Appellants for breach of contract in county court, seeking specific performance of the Contracts. Appellants filed pleas to the jurisdiction, asserting that the amount in controversy exceeded the amount over which the county court could

4

exercise jurisdiction. The county court overruled the pleas, and the case was ultimately tried to a jury, which found that Appellants had breached the Contracts but that Bowers had not. The county court awarded specific performance and attorney's fees to Bowers. Appellants appealed.

On September 3, 2020, we issued our opinion. *Magnolia Christian Church v. Bowers*, No. 03-19-00433-CV, 2020 WL 5392786, at *1 (Tex. App.—Austin Sept. 3, 2020, no pet.) (mem. op.). In a split decision, we held that Appellants had "readily" established that the amount in controversy exceeded the jurisdictional limit of the county court and that the county court should have sustained Appellants' pleas to the jurisdiction. *Id.* at *2. We reversed the county court's final judgment and dismissed the suit for lack of subject-matter jurisdiction. *Id.* at *3.

Justice Goodwin dissented. *Magnolia Christian Church v. Bowers*, No. 03-19-00433-CV, 2020 WL 5392786, at *3 (Tex. App.—Austin Sept. 3, 2020, no pet.) (mem. op.) (Goodwin, J., dissenting). In her dissent, Justice Goodwin asserted that the Court had ignored the amount the plaintiff must tender in calculating the value of the amount in controversy. *Id.* Justice Goodwin would have held that Appellants did not readily establish that the value of the Properties minus the contractual sales price that Bowers must tender to receive title exceeded the county court's jurisdictional limit. *Id.*

### The District Court Lawsuit

On September 11, 2020, Bower refiled suit in district court. Appellants responded in part by filing a summary-judgment motion, asserting that Bowers's claims were barred by limitations. The trial court denied the motion. Appellants then filed a plea to the jurisdiction, again arguing that Bowers's claims were barred by limitations. The trial court again

denied the plea. Appellants then filed a petition for writ of mandamus in this Court, making the same limitations argument. We denied their petition.

The case was then tried to the bench. The trial court found in favor of Bowers and awarded specific performance and attorney's fees under the Contracts. Appellants now appeal.

## LIMITATIONS

In their first issue, Appellants argue that the trial court "abused its discretion" in denying their plea to the jurisdiction because Bowers's claim for breach of contract was "brought well outside the applicable statute of limitations and not tolled by any statute." The statute of limitations is an affirmative defense for which the defendant bears the burden of proof. *See* Tex. R. Civ. P. 94.

An action for "specific performance of a contract for the conveyance of real property" is governed by a four-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.004(a)(1). Appellants contend that Bowers's claim accrued when Appellants failed to close the sale in March 2013. But Bowers did not file suit in district court until September 2020, roughly seven-and-a-half years after his claim allegedly accrued. Therefore, Appellants contend, Bowers's claim is barred by limitations.

Bowers responds that limitations were tolled under the Texas Savings Statute. Tex. Civ. Prac. & Rem. Code § 16.064. The Texas Savings Statute "tolls limitations for those cases filed in a trial court that lacks jurisdiction, provided the case is refiled in a proper court within sixty days of dismissal." *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 304 (Tex. 2010) (*In re USAA*). It provides:

6

> The period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if:
>
> (1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and
>
> (2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.

Tex. Civ. Prac. & Rem. Code § 16.064(a).

Here, Bowers filed suit in the county court on August 30, 2016, within four years of the alleged accrual of his claim. We dismissed the suit for lack of jurisdiction on September 3, 2020. Within sixty days of our dismissal, on September 11, 2020, Bowers refiled suit in a court of proper jurisdiction (district court). Therefore, Bowers contends, limitations were tolled under the Texas Savings Statute.

The Texas Savings Statute does not apply, however, "if the adverse party has shown in abatement that the first filing was made with intentional disregard of proper jurisdiction." *Id.* § 16.064(b). That is what Appellants contend happened here: Bowers filed suit in county court with intentional disregard of jurisdiction and, as a result, the Texas Savings Statutes does not apply to toll limitations.

"Once an adverse party has moved for relief under the 'intentional disregard' provision, the nonmovant must show that he did not intentionally disregard proper jurisdiction when filing the case." *In re USAA*, 307 S.W.3d at 312. So the question we must decide is whether Bowers met his burden to show he did not file suit in county court with intentional disregard of proper jurisdiction. We hold that Bowers met his burden.

7

The Texas Supreme Court has explained that the intentional standard for the Texas Savings Statute is analogous to the standard for setting aside a default judgment. *In re USAA*, 307 S.W.3d at 313 ("Section 16.064's intent standard is similar to that required for setting aside a default judgment . . . ."). In other words, the bar is low: "some excuse, although not necessarily a good one, will suffice to show" the first suit was not filed with intentional disregard of jurisdiction. *In re Marriage of Sandoval*, 619 S.W.3d 716, 721 (Tex. 2021) (addressing standard for setting aside default judgment). This is "[c]onsistent with our preference for courts to adjudicate cases on the merits . . . ." *Id.* It is also consistent with the purpose of the Texas Savings Statute, which was "drafted precisely because 'capable lawyers' often make 'good faith' mistakes about the jurisdiction of Texas courts." *In re USAA*, 307 S.W.3d at 313. Thus, the Texas Savings Statute protects plaintiffs who file suit in the wrong court by accident or mistake. *Id.* But "it does not apply to a strategic decision to seek relief" in a court that lacks jurisdiction. *Id.*

In the district court, Bowers responded to Appellants' plea by submitting the affidavit of his lawyer, Scott DeShazo. In his affidavit, DeShazo averred that he believed that the county court had jurisdiction to award the equitable remedy of specific performance and therefore had jurisdiction over Bowers's claim for breach of contract. In other words, DeShazo averred that he made a mistake of law.

DeShazo's "factual assertions, if true, negate intentional or consciously indifferent conduct." *B. Gregg Price, P.C. v. Series 1 - Virage Master LP*, 661 S.W.3d 419, 424 (Tex. 2023) (default-judgment case). Appellants have done nothing to controvert them. *See id.*

Moreover, two county court judges[2] and one justice from this Court agreed with DeShazo that the county court had jurisdiction over Bowers's suit. The disagreement amongst the members of the judiciary who considered whether the county court had jurisdiction over Bowers's suit shows that the county court's lack of jurisdiction was not obvious and tends to support the conclusion that Bowers did not intentionally disregard jurisdiction when he filed the first suit.

We hold that Bowers met his burden to show he did not file suit in county court with intentional disregard of proper jurisdiction and that, as a result, the Texas Savings Statute tolled limitations. Accordingly, we overrule Appellants' first issue.

## SPECIFIC PERFORMANCE

In their second issue, Appellants contend that the trial court erred in awarding specific performance for a variety of reasons. We discuss each reason in turn.

**Whether Bowers was only eligible for nominal damages**

Appellants argue that the trial court erred by awarding specific performance because "Bowers was only eligible for nominal damages without a finding of fraud." Appellants argue that the proper measure of damages for a seller's breach of a contract for the sale of real property, in the absence of a finding of fraud by the seller, is "the amount of the purchase money paid with interest."

Appellants base their argument on two opinions, both of which were issued over 100 years ago. *Kelly v. Simon*, 262 S.W. 202 (Tex. App.—San Antonio 1924, writ dism'd

---

[2] The two pleas filed by Appellants in county court were ruled on by two different judges.

9

w.o.j.); *Dobson v. Zimmerman*, 118 S.W. 236 (Tex. Civ. App. 1909, writ ref'd). *Dobson v. Zimmerman* holds in relevant part:

> If at the time the contract offered in evidence was made [the seller] had no title, and for that reason was unable to make a good conveyance, the most which the [buyer] could recover would be the amount he had deposited as earnest money . . . unless there be additional circumstances of fraud and special damages resulting to the [buyer].

118 S.W. at 240. *Kelly v. Simon* likewise holds in relevant part:

> The measure of damages for the breach of an executory contract to convey real estate when the seller cannot make title, in the absence of fraud, is the amount of the purchase money paid with interest. If no consideration has been paid, then only nominal damages may be recovered.

262 S.W. at 204.

But this is not a case where the seller "had no title," *Dobson*, 118 S.W. at 240, or could not "make title," *Kelly*, 262 S.W. at 204. Appellants held title to the Properties—they simply refused to take the necessary steps to convey the Properties.[3]

Later caselaw makes clear that "[i]t is only where the [seller] is unable to make title through no fault of his own that the buyer is limited in his recovery to a return of the purchase price and special damages." *Ryan Mortg. Inves. v. Fleming-Wood*, 650 S.W.2d 928, 935 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.). Thus, if the seller "'disables' himself from

---

[3] More specifically, Appellants refused to comply with the requirements of the title company identified in Schedule C of the title commitment so that the title company could issue the necessary title insurance. The escrow officer for the title company, Carol Bellomy, testified that (1) the outstanding items necessary to obtain title insurance were the responsibility of Appellants and (2) Appellants' failure to clear the items or provide the necessary information to the title company is the reason the Properties did not close. Bellomy's testimony was corroborated by various emails in which she repeatedly requested information necessary to clear Schedule C items from Williams, such as a resolution from the Church Board.

carrying out the contract or fails or refuses to perform," the general rule still applies. *Id.* (citing *Dobson*, 118 S.W. at 236).

The general rule is that parties to a contract may agree to certain remedies in the event of a breach. *GT & MC, Inc. v. Texas City Ref., Inc.*, 822 S.W.2d 252, 256 (Tex. App.—Houston [1st Dist.] 1991, writ denied). That is what Bowers and appellants did here. Paragraph 15 of the Contracts provides for specific performance in the event of a breach by Appellants: "If Seller fails to comply with this contract, Seller will be in default and Buyer may . . . enforce specific performance . . . ." Thus, under the express terms of the Contracts, Bowers is not limited to nominal damages as a remedy for appellants' breach.

Even if the Contracts did not expressly provide for this remedy, under Texas law, specific performance of a contract for the sale of real property is a "widely accepted" form of equitable relief. *Scott v. Sebree*, 986 S.W.2d 364, 370 (Tex. App.—Austin 1999, pet. denied). As we have explained, "because damages are generally believed to be inadequate in connection with real property," specific performance "is often granted where a valid contract to purchase real property is breached by the seller." *Id.*

In his petition, Bowers elected to enforce specific performance of the Contracts,[4] and the trial court's final judgment awarded Bowers specific performance of the Contracts. Because Bowers did not seek and was not awarded monetary damages, appellants' argument about the proper measure of monetary damages is inapposite here. We hold that Bowers was not eligible only for nominal damages.

---

[4] Bowers sought monetary damages as an alternative form of relief.

11

**Whether the Contracts required Appellants to clear all Schedule C items**

Appellants contend that the district court erred in concluding that they breached the Contracts by failing to clear the clouds on title and all items in Schedule C by the closing date. Appellants contend that they were not required, under Paragraph 6A, to provide Bowers with "clear title." Instead, they contend, Paragraph 6A simply required them to provide a title insurance policy "subject to" certain exclusions and exceptions. And none of those exclusions and exceptions included "lawsuits clouding title or incomplete ownership," which were the "two main" clouds on title and Schedule C items that remained as of the initial closing date.

Appellants' contention is true as far as it goes: the text of Paragraph 6A required them to furnish "title insurance" "subject to" certain exclusions and exceptions. But their argument fundamentally misunderstands the purpose of the exclusions and exceptions. The exclusions and exceptions list specific items, risks, and liabilities that are ***not*** covered by the policy. So, Appellants are right when they say none of the exclusions or exceptions included lawsuits or incomplete ownership. But that means precisely the opposite of what Appellants ultimately conclude: the title insurance policy had to cover these items. And for the title policy to cover these items, Appellants had to address them by clearing them from Schedule C. The title company's escrow officer, Carol Bellomy, testified that the title company could not issue a title policy unless all Schedule C items were clear. She further testified that doing so was Appellants' responsibility.

Paragraph 6D, moreover, expressly provides that "the requirements in Schedule C of the Commitment are not waived by Buyer." In other words, "the requirements in Schedule C had to be satisfied and could not be waived by" Bowers. *See Key v. Tyler*, No. 12-07-00384-CV, 2008 WL 5005910, at *6 (Tex. App.—Tyler Nov. 26, 2008, pet. denied) (mem. op.) (construing

12

nearly identical contractual language in similar dispute).  We hold that the district court did not err in concluding that Appellants breached the Contracts by failing to clear the clouds on title and all items in Schedule C.

**Whether Appellants breached the Contracts by failing to appear at closing**

Appellants contend that the district court erred in concluding that they breached the Contracts by "fail[ing] to appear at the closing or any rescheduled closings."  But the district court did not conclude that they ***breached the Contracts*** by failing to appear the closing or any rescheduled closing.  Instead, the district court simply found that Appellants failed to appear at any closing.  This is undisputedly true.  Appellants themselves concede they did not appear at any of the scheduled closings.

**Whether the Contracts automatically terminated on the initial scheduled date of closing**

Appellants contend that the district court erred in concluding that the Contracts "did not expire on their own terms on the date of closing."  Appellants argue that the Contracts terminated under Paragraph 6D because they failed to timely cure Bowers's objections to defects to title disclosed in the title company's commitment.  Paragraph 6D provides, as relevant here:

> Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary.  If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

Thus, under Paragraph 6D, Seller must cure "the timely objections of Buyer or any third party lender within 15 days" of receiving them, so long as doing so does not

13

cause Seller "to incur any expense." If Seller fails to timely cure the objections, the Contracts terminate.

Appellants contend that under Paragraph 6D, they had no duty to cure objections if doing so would cause them "to incur any expense." But clearing certain Schedule C items would have caused them to incur expense. Specifically, Appellants would have incurred expense hiring an attorney in an attempt to settle or dismiss the pending but dormant lawsuit clouding title to the Properties. Because Appellants would have had to incur expense to clear this item, Appellants argue they had no duty to clear it. And because Appellants chose not to clear this item, Appellants argue that the Contracts terminated under Paragraph 6D. We disagree.

Appellants' duty to clear all Schedule C items did not arise from any duty to "cure the timely objections of Buyer" under Paragraph 6D. Instead, it arose from their duty to "furnish to Buyer" a "policy of title insurance" under Paragraph 6A. And as the escrow officer explained at trial, Appellants could not procure a title policy unless they cleared all Schedule C items.

Bowers did not make any objections to defects to title disclosed in Schedule C of the title company's commitment; Bowers did not have to, as Paragraph 6D expressly provides that "the requirements in Schedule C of the Commitment are not waived by Buyer." Instead, the Schedule C "objections" (to the extent that they can be properly characterized as "objections" under the Contracts) came from the title company, and Paragraph 6D simply does not address these types of objections.

Appellants' failure to clear all Schedule C items and thereby furnish a policy of title insurance under Paragraph 6D does not equate to a failure to timely cure objections of Buyer under Paragraph 6D. We hold that the district court did not err in concluding that the Contracts did not expire on their own terms.

14

**Whether Bowers had to present evidence of damages**

Appellants complain that Bowers failed to present evidence of monetary damages. But Bowers did not need to—Bowers sought and the district court awarded specific performance, which is an equitable remedy awarded in lieu of monetary damages. *White Knight Dev., LLC v. Simmons*, 718 S.W.3d 203, 209 (Tex. 2025); *Scott*, 986 S.W.2d at 369–70. Appellants' complaint is inapposite here.

**Whether monetary damages were inadequate**

Appellants argue that the district court erred in awarding specific performance because Bowers failed to present evidence that monetary damages would be inadequate. But again, Bowers did not have to inadequacy—monetary damages are presumptively inadequate as a remedy for the breach of a contract for the sale of real property, *see Scott*, 986 S.W.2d at 370 ("damages are generally believed to be inadequate" as remedy for breach of contract for sale of real property), and specific performance is "enforced as a matter of right." *Bennett v. Copeland*, 235 S.W.2d 605, 609 (Tex. 1951); *see also Griffin's Est. v. Sumner*, 604 S.W.2d 221, 225 (Tex. App.—San Antonio 1980, writ ref'd n.r.e.) ("The rationale [for specific performance] is that the recovery of monetary damages would be inadequate to compensate the complainant, especially in cases involving a contract for the sale of land . . . .").

**Whether Bowers was ready, willing, and able to perform**

The district court made the following finding of fact:

> At all relevant times, [Bowers] was ready, willing, and able to perform. [Bowers] had a secured line of credit at Brenham National Bank that had available funds for the purchase of the properties on the original March 29, 2013 closing date. At any period between March 29, 2013, and July 2016, Brenham National Bank was ready to provide the full amount of the

purchase price for the properties. [Bowers] appeared at several rescheduled closings, and he tendered the entirety of the purchase price on July 26, 2016.

*See Desai v. Good Hope Missionary Baptist Church of Houston*, No. 01-19-00420-CV, 2021 WL 1414282, at *6 (Tex. App.—Houston [1st Dist.] Apr. 15, 2021, pet. denied) (mem. op.) (to be awarded specific performance, party must show he performed, tendered performance, and was ready, willing, and able to perform at all relevant times).

Appellants contend that the district court erred in finding that Bowers was ready, willing, and able to perform on March 29, 2013, because Bowers did not actually close on that date due to the Properties' clouded titles. But, as discussed, Bowers had no duty to purchase the Properties with clouded titles. What matters, for purposes of determining whether he was ready, willing, and able to perform, is that the funds to close were available had Appellants cleared all Schedule C items.

Appellants further contend that Bowers never actually tendered the full purchase price on July 26, 2016. But Appellants' contention conflicts with the actual evidence, which includes:

- an email, dated July 26, 2016, from Bellomy to Williams in which she states that "the lender has delivered funds for closing," as well as

- Bellomy's testimony that on July 26, 2016, Bowers "showed up," "signed all the closing documents," and "delivered the funds."

**Whether awarding specific performance is inequitable**

Finally, Appellants argue that awarding specific performance here was inequitable because the value of the Properties appreciated significantly during the pendency of the two

16

lawsuits. But Appellants can hardly complain about the appreciation that occurred *after* they failed to perform their duty to sell the Properties.

Having rejected Appellants' argument for why the district court erred in awarding specific performance, we overrule Appellants' second issue.

## CONCLUSION

We affirm the district court's final judgment.

_____

Maggie Ellis, Justice

Before Justices Theofanis, Crump, and Ellis

Affirmed

Filed:   February 27, 2026