**In re UNITED SERVICES AUTOMO-BILE ASSOCIATION, Relator.**

No. 07–0871.

Supreme Court of Texas.

Argued Dec. 9, 2008.

Decided March 26, 2010.

Rehearing Denied May 7, 2010.

Lacey L. Gourley, Bracewell & Giuliani, L.L.P., Pamela Stanton Baron, Thomas R. Phillips, Baker Botts L.L.P., Austin, TX, Mario A. Barrera, Bracewell & Giuliani LLP, San Antonio, TX, William H. Ford, Ford & Massey, P.C., San Antonio, TX, for Relator.

Jeffrey D. Small, Law Office of Jeff Small, Jeffrey Alan Goldberg, Cynthia A. Cano, Law Offices of Jeffrey A. Goldberg, San Antonio, TX, for Real Party in Interest.

Charles C. High Jr., Kemp Smith P.C., El Paso, TX, for Amicus Curiae Texas Association of Business.

Vanetta Loraine Christ, Vinson & Elkins LLP, Houston, TX, for Amicus Curiae Texas Employment Law Council.

Daniel L. Geyser, Asst. Solicitor General, James C. Ho, Solicitor General of Texas, David S. Morales, Office of the Attorney General of Texas, Clarence Andrew Weber, First Assistant Attorney General, Greg W. Abbott, Attorney General of Texas, Austin, TX, for Amicus Curiae State of Texas.

Chief Justice JEFFERSON delivered the opinion of the Court.

Texas has some 3,241 trial courts[1] within its 268,580 square miles.[2] Jurisdiction is limited in many of the courts; it is general in others. *Compare* TEX. GOV'T CODE § 25.0021 (describing jurisdiction of statutory probate court), *with*

---

1. Texas Courts Online Home Page, *http://www.courts.state.tx.us/* (all Internet materials as visited March 24, 2010 and copy available in Clerk of Court's file). This figure includes municipal courts, whose jurisdiction is generally limited to criminal matters, although they may also hear certain civil cases involving dangerous dogs. *See* TEX. HEALTH & SAFETY

CODE § 822.0421. It also includes statutory probate courts.

2. TEXAS ALMANAC 2010–1160 (Elizabeth Cruce Alvarez ed., Texas State Historical Association 65th ed. 2010), *available at http://www.texasalmanac.com/environment/*.

*id.* § 24.007–.008 (outlining district court jurisdiction); *Thomas v. Long,* 207 S.W.3d 334, 340 (Tex.2006) (noting that Texas district courts are courts of general jurisdiction). We have at least nine different types of trial courts,[3] although that number does not even hint at the complexities of the constitutional provisions and statutes that delineate jurisdiction of those courts. *See* OFFICE OF COURT ADMINISTRATION, 2008 ANNUAL REPORT, TEXAS JUDICIAL SYSTEM, SUBJECT-MATTER JURISDICTION OF THE COURTS *passim* (2008), *available at http://www.courts.state.tx.us/pubs/AR2008/jud branch/2a-subject-matter-jurisdiction-of-courts.pdf;*[4] GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 367 (1977). Statutory county courts (of which county courts at law are one type)[5] usually have jurisdictional limits of $100,000, *see* TEX. GOV'T CODE § 25.0003(c)(1), unless, of course, they do not, *see, e.g.,* TEX. GOV'T CODE §§ 25.0732(a) (El Paso County), 25.0862(a) (Galveston County), 25.0942(a) (Gregg County), 25.1322(a) (Kendall County), 25.1802(a) (Nueces County), 25.2142(a) (Smith County); *see also Sultan v. Mathew,* 178 S.W.3d 747, 756 (Tex.2005) (Hecht, J., dissenting) (observing that "[m]onetary jurisdictional limits on statutory county courts are generally from $500 to $100,000, but they vary widely from county to county, and many such courts have no monetary limits"). Appellate rights can vary depending on which court a case is filed in, even among trial courts with concurrent jurisdiction, and even when the same judge in the same courtroom presides over two distinct courts. *See, e.g., Sultan,* 178 S.W.3d at 752 (holding that there was no right of appeal to courts of appeals from cases originating in small claims courts, but recognizing that justice court judgment would be appealable); *see also id.* at 754–55 (Hecht, J., dissenting) (noting that the same justice of the peace hears small claims cases and justice court cases).[6] Consider the five-step process involved in determining the jurisdiction of any particular trial court:

> [R]ecourse must be had first to the Constitution, second to the general statutes establishing jurisdiction for that level of court, third to the specific statute authorizing the establishment of the particu-

**3.** Those courts include district courts, criminal district courts, constitutional county courts, statutory county courts, justice of the peace courts, small claims courts, statutory probate courts, and municipal courts. They also include family district courts which, although they are district courts of general jurisdiction, have primary responsibility for handling family law matters. OFFICE OF COURT ADMINISTRATION, 2008 ANNUAL REPORT, TEXAS JUDICIAL SYSTEM, SUBJECT-MATTER JURISDICTION OF THE COURTS 1, 3–18 (2008), *available at http://www.courts.state.tx.us/pubs/AR2008/jud branch/2a-subject-matter-jurisdiction-of-courts.pdf.*

**4.** In a page-and-a-half, this report explains the subject matter jurisdiction of our appellate courts. OFFICE OF COURT ADMINISTRATION, SUBJECT-MATTER JURISDICTION OF THE COURTS at 1–2. The remainder of the eighteen-page, dual column, single-spaced document identifies, in painstaking detail, the various jurisdictional schemes governing our trial courts. *Id.* at 3–18.

**5.** TEX. GOV'T CODE § 21.009(2) (" 'Statutory county court' means a county court created by the legislature under Article V, Section 1, of the Texas Constitution, including county courts at law, county criminal courts, county criminal courts of appeals, and county civil courts at law, but does not include statutory probate courts as defined by Section 3, Texas Probate Code.").

**6.** Section 28.053 of the Government Code, at issue in *Sultan,* was recently amended to allow appeals to the court of appeals from de novo trials in county court on claims originating in small claims court. *See* Act of June 19, 2009, 81st Leg., R.S., ch. 1351, section 8, 2009 Tex. Gen. Laws 4274, 4274.

lar court in question, fourth to statutes creating other courts in the same county (whose jurisdictional provisions may affect the court in question), and fifth to statutes dealing with specific subject matters (such as the Family Code, which requires, for example, that judges who are lawyers hear appeals from actions by non-lawyer judges in juvenile cases).

OFFICE OF COURT ADMINISTRATION, SUBJECT-MATTER JURISDICTION OF THE COURTS at 1.

Our court system has been described as "one of the most complex in the United States, if not the world." BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS, at 367; *see also Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex.1996) (voicing "concern[ ] over the difficulties created for the bench, the bar, and the public by the patchwork organization of Texas' several trial courts"); *Sultan*, 178 S.W.3d at 753 (Hecht, J., dissenting) (noting that Texas courts' "jurisdictional scheme ... has gone from elaborate ... to Byzantine"); *Camacho v. Samaniego*, 831 S.W.2d 804, 807 n. 4, 811 (Tex.1992) (stating that "confusion and inefficiency are endemic to a judicial structure with different courts of distinct but overlapping jurisdiction" and observing that "there are still more than fifty different jurisdictional schemes for the statutory county courts"); TEXAS JUDICIAL COUNCIL, ASSESSING JUDICIAL WORKLOAD IN TEXAS' DISTRICT COURTS 2 (2001), *available at http://www.courts.state. tx.us/tjc/TJC Reports/Final Report.pdf* (observing that " 'the Texas trial court system, complex from its inception, has become ever more confusing as ad hoc responses are devised to meet the needs of an urban, industrialized society' " (quoting CITIZENS' COMMISSION ON THE TEXAS JUDICIAL SYSTEM, REPORT AND RECOMMENDATIONS—

INTO THE TWENTY-FIRST CENTURY 17 (1993))).

Proposals to modernize this antiquated jurisdictional patchwork have failed,[7] but the Legislature has attempted to address one of its most worrisome aspects. In 1931, the Legislature passed "[a]n act to extend the period of limitation of any action in the wrong court." Act approved Apr. 27, 1931, 42d Leg., R.S., ch. 81, 1931 Tex. Gen. Laws 124, 124, current version at TEX. CIV. PRAC. & REM.CODE § 16.064. This statute tolls limitations for those cases filed in a trial court that lacks jurisdiction, provided the case is refiled in a proper court within sixty days of dismissal. TEX. CIV. PRAC. & REM.CODE § 16.064(a). The tolling provision does not apply, however, to those cases in which the first filing was made with "intentional disregard of proper jurisdiction." *Id.* § 16.064(b). We must decide today whether the plaintiff intentionally disregarded the jurisdictional limits applicable to county courts at law in Bexar County. Because we conclude that he did, in a way that cannot be cured by ordinary appellate review, we conditionally grant relief.

## I. Background

James Steven Brite sued USAA, his former employer, alleging that it had illegally discriminated against him based on his age, violating the Texas Commission on Human Rights Act (TCHRA). *See generally United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400 (Tex.2007) (*"Brite I"*). He filed suit in the Bexar County Court at Law No. 7, which has jurisdiction concurrent with that of the district court in "civil cases in which the matter in controversy exceeds $500 but does not exceed $100,000, excluding interest, statutory or punitive

---

**7.** *See, e.g.,* Tex. S.B. 1204, 80th Leg., R.S. (2007) ("AN ACT relating to the reorganization and administration of, and procedures relating to, courts in this state, including procedures for appeals."); Tex. H.B. 2906, 80th Leg., R.S. (2007) (same).

damages and penalties, and attorney's fees and costs, as alleged on the face of the petition...." Tex. Gov't Code § 25.0003(c)(1). Brite asserted in his original petition that his damages exceeded the $500 statutory minimum, but he did not plead that his damages were below the $100,000 maximum. *Brite I*, 215 S.W.3d at 401. He pleaded that "[i]n all reasonable probability, [his] loss of income and benefits will continue into the future, if not for the balance of [his] natural life" and sought "compensation due Plaintiff that accrued at the time of filing this Petition" (back pay), "the present value of unaccrued wage payments" (front pay), punitive damages, and attorney's fees. *Id.*

Before limitations expired, USAA filed a plea to the jurisdiction, contending that Brite's damage claims exceeded the $100,000 jurisdictional limit of the statutory county court, excluding interest, statutory or punitive damages, and attorney's fees and costs. USAA argued that because Brite's annual salary was almost $74,000 when he was terminated, his front pay and back pay allegations alone exceeded the county court's jurisdictional maximum. Brite opposed, and the trial court twice denied, USAA's jurisdictional plea. Shortly thereafter, Brite amended his petition to seek damages of $1.6 million, and subsequently claimed in discovery responses that " 'his lost wages and benefits in the future, until age 65, total approximately $1,000,000.00.' " *Brite I*, 215 S.W.3d at 401 (quoting discovery responses). After a jury trial, the trial court awarded Brite $188,406 in back pay, $350,000 in front pay, $300,000 in punitive damages, $129,387 in attorney's fees, and prejudgment interest. *Id.*

A divided court of appeals affirmed the trial court's judgment. *See United Servs. Auto. Ass'n v. Brite*, 161 S.W.3d 566, 579 (Tex.App.-San Antonio 2005, pet. granted).

We reversed, concluding that the amount in controversy at the time Brite filed suit exceeded $100,000, depriving the county court at law of jurisdiction over the matter. *Brite I*, 215 S.W.3d at 402. We dismissed the underlying suit for want of jurisdiction. *Id.* at 403.

Within sixty days of our judgment dismissing the county court case, Brite refiled his claim in Bexar County district court. USAA filed a plea to the jurisdiction and moved for summary judgment asserting, among other things, that the trial court lacked subject matter jurisdiction because Brite failed to file suit within TCHRA's two-year time limit; that the tolling provision in section 16.064 of the Civil Practice and Remedies Code did not apply to TCHRA claims; and that even if it did, Brite's original suit was filed with "intentional disregard of proper jurisdiction," depriving him of that provision's protection. The trial court denied the plea and motion. The court of appeals denied relief, concluding that USAA had not established that its appellate remedy was inadequate. 2007 WL 3003131, at *1, 2007 Tex.App. LEXIS 8206, at *1–*2. USAA now petitions this Court for mandamus relief.

## II. Is TCHRA's two-year period for filing suit jurisdictional?

USAA argues that TCHRA's two year deadline for filing suit is jurisdictional, precluding application of the tolling statute. But " '[j]urisdiction,' " as the United States Supreme Court has observed, " 'is a word of many, too many, meanings.' " *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (D.C.Cir.1996)). Nineteen years ago, in a footnote, we observed that the time period for filing a TCHRA lawsuit was "mandatory and jurisdictional." *Schroeder v. Texas Iron*

*Works, Inc.,* 813 S.W.2d 483, 487 n. 10 (1991).[8] In support, we cited *Green v. Aluminum Co. of America,* 760 S.W.2d 378, 380 (Tex.App.-Austin 1988, no writ), which in turn relied on our decision in *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084 (1926). *Mingus* held that the requirements of the Workmen's Compensation Act were jurisdictional, and that "[t]he general rule is that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Mingus,* 285 S.W. at 1087.

▪ But we, like the U.S. Supreme Court,[9] have recognized that our sometimes intemperate use of the term "jurisdictional" has caused problems. Characterizing a statutory requirement as jurisdictional means that the trial court does not have-and never had-power to decide the case. *See Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser,* 140 S.W.3d 351, 359 (Tex.2004) ("The failure of a jurisdictional requirement deprives the court of the power to act (other than to determine that it has no jurisdiction), and ever to have acted, as a matter of law."). Thus, "[n]ot only *may* an issue of subject matter jurisdiction 'be raised for the first time on appeal by the parties or by the court', a court is *obliged* to ascertain that subject matter jurisdiction exists regardless of whether the parties questioned it." *Id.* at 358 (footnote omitted).

▪ In *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex.2000) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt. b. at 118 (1982)), we observed that " '[t]he classification of a matter as one of jurisdiction ... opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment.' " Thus, "[a]lthough *Mingus* represented the dominant approach when it was decided, 'the modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction.' " *Dubai,* 12 S.W.3d at 76 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. e. at 113). We overruled *Mingus* "to the extent that it characterized the plaintiff's failure to establish a statutory prerequisite as jurisdictional." *Id.* Instead, we held that " '[t]he right of a plaintiff to maintain a suit, while frequently treated as going to the question of jurisdiction, has been said to go in reality to the right of the plaintiff to relief rather than to the jurisdiction of the court to afford it.' " *Id.* at 76–77 (quoting 21 C.J.S. *Courts* § 16, at 23 (1990)).

Since *Dubai,* we have been "reluctant to conclude that a provision is jurisdictional, absent clear legislative intent to that effect." *City of DeSoto v. White,* 288 S.W.3d 389, 393 (Tex.2009). We have held that the Payday Law's 180–day period for filing a wage claim, though "a mandatory condition to pursuing the administrative cause

---

8. In 1993, the limitations period was changed from one to two years. Act of May 14, 1993, 73rd Leg. R.S., ch. 276, § 7, 1993 Tex. Gen. Laws 1285, 1291 (amending TEX.REV.CIV. STAT. art. 5221k, § 7.01(a)) (now codified at TEX. LAB.CODE § 21.256).

9. *See, e.g., Arbaugh v. Y & H Corp.,* 546 U.S. 500, 510, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (noting that "[t]his Court, no less than other courts, has sometimes been profligate in its use of the term"); *Kontrick v. Ryan,* 540 U.S. 443, 454, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (observing that "[c]ourts, including this Court, it is true, have been less than meticulous" in their use of the term).

of action," was "not ... a bar to ... [the] exercise of jurisdiction"; that the Tort Claims Act's notice provision was "a complete defense to suit but [did] not deprive the court of subject matter jurisdiction"; that the failure to comply with dismissal dates in parental rights termination cases did not deprive trial courts of jurisdiction; that the noncompliance with a mandatory notice requirement in the Fire Fighter and Police Officer Civil Service Act did not divest a hearing examiner of jurisdiction over an appeal; and that the statutory requirement that a condemnor and a property owner be "unable to agree" on damages was not jurisdictional but that a failure to satisfy the requirement would result in abatement. *City of DeSoto*, 288 S.W.3d at 398; *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 644 (Tex.2009); *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex.2008); *Loutzenhiser*, 140 S.W.3d at 354; *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 191 (Tex.2004).

▆▆▆ We have been careful to emphasize, however, that a statutory requirement commanding action, even if not jurisdictional, remains mandatory. *Loutzenhiser*, 140 S.W.3d at 359 ("The failure of a non-jurisdictional requirement mandated by statute may result in the loss of a claim, but that failure must be timely asserted and compliance can be waived."). And some requirements, such as a timely notice of appeal, remain jurisdictional. *See In the Interest of K.A.F.*, 160 S.W.3d 923, 928 (Tex.2005); *accord Bowles v. Russell*, 551 U.S. 205, 213, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) (concluding that party's "failure to file his notice of appeal in accordance with the statute therefore deprived the Court of Appeals of jurisdiction"). Moreover, when elements of a statutory claim involve "the jurisdictional inquiry of sovereign immunity from suit," those elements can be relevant to both jurisdiction and liability. *State v. Lueck*, 290 S.W.3d 876, 883 (Tex.2009).

But we have never revisited our statement in *Schroeder*, even though courts have questioned whether *Schroeder* remains the law after *Dubai*. *See, e.g., Ramirez v. DRC Distribs., Ltd.*, 216 S.W.3d 917, 921 n. 8 (Tex.App.-Corpus Christi 2007, pet. denied) (noting that "[a]lthough the Texas Supreme Court held in *Schroeder v. Texas Iron Works* ... that exhaustion of the TCHRA's administrative remedies is mandatory and jurisdictional, several courts of appeals have questioned whether its decision in *Dubai Petroleum Co. v. Kazi* indicated a retreat from this position") (collecting cases). Most recently, although we observed that "in the past we have described a statutory time limitation in the Commission on Human Rights Act as 'mandatory and jurisdictional,'" we stated only that "those cases predate *Dubai* and dealt with a different statutory scheme than presented here." *Igal*, 250 S.W.3d at 83 n. 5 (quoting *Schroeder*, 813 S.W.2d at 486).

▆▆▆ Today we reexamine whether section 21.256's time limit is jurisdictional. We begin with the statutory language, presuming "that the Legislature did not intend to make the [provision] jurisdictional; a presumption overcome only by clear legislative intent to the contrary." *City of DeSoto*, 288 S.W.3d at 394. The statute provides that an action "may not be brought ... later than the second anniversary of the date the complaint relating to the action is filed." Tex. Lab. Code § 21.256. The Legislature titled the provision "Statute of Limitations," *id.*, and while such a heading cannot limit or expand the statute's meaning, Tex. Gov't Code § 311.024, the heading "gives some indication of the Legislature's intent,"

*Loutzenhiser,* 140 S.W.3d at 361; *see also Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (noting that legislative history indicated that Title VII filing deadline was intended to operate as a statute of limitations rather than jurisdictional requirement). We too have characterized the deadline as a statute of limitations, calling it a "limitation period" and noting that "[t]he statute of limitations for such action runs from the date of filing the complaint with the Commission." *Schroeder,* 813 S.W.2d at 487 n. 10. In *Schroeder,* a case that dealt primarily with "whether exhaustion of administrative remedies is a prerequisite to bringing a civil action for age discrimination in employment," the legal character of the section 21.256 deadline was not at issue. *Schroeder,* 813 S.W.2d at 484; *accord Zipes,* 455 U.S. at 395, 102 S.Ct. 1127 (stating that "[a]lthough our cases contain scattered references to the timely-filing requirement as jurisdictional, the legal character of the requirement was not at issue in those cases, and as or more often in the same or other cases, we have referred to the provision as a limitations statute"). While the phrase "may not be brought" makes the provision mandatory, *see* TEX. GOV'T CODE § 311.016(5), the statute does not indicate that the provision is jurisdictional or that the consequence of noncompliance is dismissal. *City of DeSoto,* 288 S.W.3d at 396 (observing that statute did not contain explicit language indicating that requirement was jurisdictional nor did it provide a consequence for noncompliance); *accord Igal,* 250 S.W.3d at 84 (noting that statutory language did not indicate that statute was intended to address jurisdiction, as it merely "establish[ed] a procedural bar similar to a statute of limitations and does not prescribe the boundaries of jurisdiction"); *see also Zipes,* 455 U.S. at 394, 102 S.Ct. 1127 (noting that statutory time period for filing EEOC claim under Title VII "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts").

 Our procedural rules, which have the force and effect of statutes, and our cases classify limitations as an affirmative defense. TEX.R. CIV. P. 94; *In re City of Georgetown,* 53 S.W.3d 328, 332 (Tex. 2001); *see also Day v. McDonough,* 547 U.S. 198, 205, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) ("A statute of limitations defense ... is not 'jurisdictional,' hence courts are under no obligation to raise the time bar sua sponte."). While the Legislature could make the Labor Code filing deadlines jurisdictional, as it has in cases involving statutory requirements relating to governmental entities, *see* TEX. GOV'T CODE § 311.034 (providing that "statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity"), it has not done so here.

 We also consider the statute's purpose. *See Loutzenhiser,* 140 S.W.3d at 360; *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 494 (Tex.2001). The TCHRA was enacted to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964." TEX. LAB. CODE § 21.001(1). It is "modeled after federal civil rights law," *NME Hosps., Inc. v. Rennels,* 994 S.W.2d 142, 144 (Tex.1999), and "[o]ne of the primary goals of the statute is to coordinate state law with federal law in the area of employment discrimination," *Vielma v. Eureka Co.,* 218 F.3d 458, 462 (5th Cir.2000). Thus, "analogous federal statutes and the cases interpreting them guide our reading of the TCHRA." *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex.2001)

The United States Supreme Court has consistently construed Title VII's requirements as mandatory but not jurisdictional.

*See Arbaugh v. Y & H Corp.,* 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *Zipes,* 455 U.S. at 393, 102 S.Ct. 1127; *see also Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (holding that equitable tolling applied to Title VII suit against federal employer); *Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 349 n. 3, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (rejecting argument that time period was jurisdictional and holding that filing of class action tolled limitations under Title VII). In *Zipes,* 455 U.S. at 393, 102 S.Ct. 1127, the Court held that the timely filing of an employment discrimination complaint with the Equal Employment Opportunity Commission was not a jurisdictional prerequisite to suit under Title VII, a conclusion compelled by "[t]he structure of Title VII, the congressional policy underlying it, and the reasoning of [the Court's] cases." In a later case, the Court decided that Title VII's 15–employee minimum was an element of the claim, rather than a jurisdictional prerequisite. *Arbaugh,* 546 U.S. at 516, 126 S.Ct. 1235. In reaching that conclusion, the Court adopted a "readily administrable bright line" rule:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue.... But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 515–16, 126 S.Ct. 1235 (footnote omitted). This is not unlike our own post-Dubai approach: we have been "reluctant to conclude that a provision is jurisdictional, absent clear legislative intent to that effect." *City of DeSoto,* 288 S.W.3d at 393.

Although the Supreme Court has not addressed whether the time period for filing suit under Title VII is jurisdictional, every federal circuit that has considered the issue has held that it is not. *See Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236, 239–40 (3d Cir.1999); *Smith–Haynie v. D.C.,* 155 F.3d 575, 579 (D.C.Cir.1998); *Truitt v. County of Wayne,* 148 F.3d 644, 646 (6th Cir.1998) ("Although *Zipes* dealt only with the time limit for filing charges of discrimination with the EEOC, its logic has been extended to the ninety-day time limit for filing suit in the district court after receipt of a right-to-sue letter.") (citations omitted); *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1161 (11th Cir.1993); *Scheerer v. Rose State Coll.,* 950 F.2d 661, 665 (10th Cir.1991); *Hill v. John Chezik Imps.,* 869 F.2d 1122, 1124 (8th Cir.1989); *Valenzuela v. Kraft, Inc.,* 801 F.2d 1170, 1174 (9th Cir.1986) (concluding that Supreme Court precedent "firmly establish[es] that the 90–day filing period is a statute of limitations subject to equitable tolling in appropriate circumstances"); *Espinoza v. Mo. Pac. R.R. Co.,* 754 F.2d 1247, 1248 n. 1 (5th Cir.1985); *Brown v. J.I. Case Co.,* 756 F.2d 48, 50 (7th Cir.1985); *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d Cir.1984) (noting that "[t]he Supreme Court ... has evinced a policy of treating Title VII time limits not as jurisdictional predicates, but as limitations periods subject to equitable tolling"); *see also Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151–52, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (holding that plaintiff had not shown herself entitled to equitable tolling of filing deadline, but not rejecting equitable tolling as inapplicable to that deadline).

██ We also consider the consequences that result from each interpretation. *Helena Chem.,* 47 S.W.3d at 495. A judgment is void if rendered by a court without subject matter jurisdiction. *Map-*

co, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex.1990). If TCHRA's limitations period were jurisdictional, trial courts that have denied summary judgment motions based on the failure to satisfy that requirement would forever have their judgments open to reconsideration. Conversely, those courts that granted such motions would have had no power to do so, nor would appellate courts have had the power to affirm the judgments. See, e.g., Vu v. ExxonMobil Corp., 98 S.W.3d 318, 321 (Tex.App.–Houston [1st Dist.] 2003, pet. denied) (affirming summary judgment because TCHRA suit not filed until more than two years after charge of discrimination); see also Zipes, 455 U.S. at 397, 102 S.Ct. 1127 (observing that, if the timely filing requirement were jurisdictional, "the District Courts in Franks [v. Bowman Transp. Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976),] and Albemarle Paper Co. v. Moody, 422 U.S. 405 [95 S.Ct. 2362, 45 L.Ed.2d 280] (1975), would have been without jurisdiction to adjudicate the claims of those who had not filed as well as without jurisdiction to award them seniority," but "[w]e did not so hold"). It is preferable to "avoid a result that leaves the decisions and judgments of [a tribunal] in limbo and subject to future attack, unless that was the Legislature's clear intent." City of DeSoto, 288 S.W.3d at 394.

■■■ In keeping with the statute's language, Dubai and subsequent cases, as well as the purposes behind TCHRA and federal interpretations of Title VII, we conclude that the two-year period for filing suit is mandatory but not jurisdictional, and we overrule Schroeder to the extent it held otherwise.

## II. Does the tolling statute, Tex. Civ. Prac. & Rem.Code § 16.064, apply to a TCHRA claim?

In pertinent part, section 16.064 provides:

The period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if:

(1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and

(2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.

TEX. CIV. PRAC. & REM.CODE § 16.064(a).

USAA contends that, even if the limitations period is not jurisdictional, the tolling statute does not apply, citing a string of cases holding generally that section 16.064 does not apply to special statutory proceedings. See, e.g., Heart Hosp. IV, L.P. v. King, 116 S.W.3d 831, 836 (Tex.App.-Austin 2003, pet. denied); Argonaut Sw. Ins. Co. v. Walker, 64 S.W.3d 654, 657 (Tex.App.-Texarkana 2001, pet. denied); Gutierrez v. Lee, 812 S.W.2d 388, 392 (Tex. App.-Austin 1991, writ denied); Castillo v. Allied Ins. Co., 537 S.W.2d 486, 487 (Tex. Civ.App.-Amarillo 1976, writ ref'd n.r.e.); Pan Am. Fire & Cas. Co. v. Rowlett, 479 S.W.2d 782, 783 (Tex.Civ.App.-Eastland 1972, writ ref'd n.r.e.); Braden v. Transp. Ins. Co., 307 S.W.2d 655, 656 (Tex.Civ. App.-Dallas 1957, no writ); Leadon v. Truck Ins. Exch., 253 S.W.2d 903, 905 (Tex.Civ.App.-Galveston 1952, no writ); Bear v. Donna Indep. School Dist., 85 S.W.2d 797, 799 (Tex.Civ.App.-San Antonio 1935, writ dism'd w.o.j.).

But there are at least three problems with this approach. First, we have never

endorsed the theory that section 16.064 is inapplicable to causes of action created by statute. All of those decisions were from our courts of appeals, and most predate *Dubai*. Second, those cases are based on the *Mingus* rationale, overruled in *Dubai*, that a "dichotomy [exists] between common-law and statutory actions," with mandatory statutory provisions also being jurisdictional. *Dubai*, 12 S.W.3d at 76. Post-*Dubai*, we have rejected such a distinction, adopting instead "an approach to jurisdictional questions designed to strengthen finality and reduce the possibility of delayed attacks on judgments, *regardless of whether the claim was anchored in common law or was a specially-created statutory action.*" *City of DeSoto*, 288 S.W.3d at 394 (emphasis added).

 Third, the argument conflates equitable tolling with statutory tolling. The former is a court-created doctrine, *see e.g., Taliani v. Chrans*, 189 F.3d 597, 597 (7th Cir.1999) (noting that "equitable tolling [is] the judge-made doctrine … that excuses a timely filing when the plaintiff could not, despite the exercise of reasonable diligence, have discovered all the information he needed in order to be able to file his claim on time"), that may not apply if a statutory requirement is deemed jurisdictional, *see Zipes*, 455 U.S. at 393, 102 S.Ct. 1127 (holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit, … but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). The latter is a legislative dictate that limitations be tolled for "*any* action" filed in the wrong court. *See* Act approved Apr. 27, 1931, 42d Leg., R.S., ch. 81, 1931 Tex. Gen. Laws 124, 124, current version at Tex. Civ. Prac. & Rem. Code § 16.064 (emphasis added).

 Here we must construe two statutes—one that creates a limitations period and a second that tolls it. There is no reason, absent clear legislative intent, that we should not harmonize the two. *See La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 565 (Tex.1984) ("Generally, courts are to construe statutes so as to harmonize with other relevant laws, if possible."). Had the Legislature wanted to prohibit statutory tolling, it could have done so, but TCHRA is devoid of any such indication. *Cf.* Tex. Civ. Prac. & Rem.Code § 74.251(a) (creating limitations period that applies "[n]otwithstanding any other law"); *Liggett v. Blocher*, 849 S.W.2d 846, 850 (Tex.App.-Houston [1st Dist.] 1993, no writ) (holding that "notwithstanding any other law" meant that statutory tolling provision did not apply to health care liability claims). Thus, absent language indicating that section 16.064 was not intended to apply to TCHRA claims, the statute of limitations is tolled for those cases falling within section 16.064's savings provision.

## IV. Was Brite's first suit filed with "intentional disregard of proper jurisdiction"?

Section 16.064 will not save a later-filed claim if the first action was filed "with intentional disregard of proper jurisdiction." Tex. Civ. Prac. & Rem.Code § 16.064(b). USAA contends that is what happened here, while Brite asserts that a jury must decide whether he intended to evade jurisdiction, given that he vigorously denies doing so. We agree with USAA.

Noting "[t]he importance of simplifying Court procedure," the Texas Judicial Council in 1930 drafted the tolling statute. *See* Second Annual Report of the Texas Civil Judicial Council to the Governor and Supreme Court, Bill No. 6, at 10–12 (1930). The Legislature made a single change—extending the refiling period from thirty to sixty days—and passed the bill. *See* Act approved Apr. 27, 1931, 42d

Leg., R.S., ch. 81, 1931 Tex. Gen. Laws 124, 124, current version at Tex. Civ. Prac. & Rem. Code § 16.064; *see also Burford v. Sun Oil Co.*, 186 S.W.2d 306, 310 (Tex.Civ. App.-Austin 1944, writ ref'd w.o.m.). In its recommendation accompanying the bill, the Council noted

> [t]hat the wrong court is frequently and in good faith chosen by capable lawyers, [as] evidenced by the hundreds of cases cited in the annotations upon the subject given in Vernon's Annotated Texas Statutes,—9 pages upon Justice Court, 17 pages upon county court and 29 pages upon district court jurisdiction.

Second Annual Report, at 11. The Council explained that the Texas bill was based on a Kentucky statute that tolled limitations for actions "commenced in due time and in good faith" in a court that lacked jurisdiction. *Id.* (citing Carroll's Ky. Stat. § 2545 (1922)). The Council stated that its bill was "like that of Kentucky in substance, but . . . a definition of 'good faith' [is] supplied." *Id.* at 11–12. It is that definition that is at issue here.

 As we noted in *Brite I*, "[t]he jurisdictional statute for county courts at law values the matter in controversy on the amount of damages 'alleged' by the plaintiff. . . ." *Brite I*, 215 S.W.3d at 402–03 (quoting Tex. Gov't Code § 25.0003(c)(1)). Here, Brite's petition omitted the statement required by our rules—that the "damages sought are within the jurisdictional limits of the court," Tex.R. Civ. P. 47(b)—and instead pleaded only that his damages exceeded $500. Brite has never contended that he was unaware of or confused about the county court's jurisdictional limitation. *See, e.g., Clary Corp. v. Smith*, 949 S.W.2d 452, 461 (Tex.App.-Fort Worth 1997, pet. denied)

(noting that 16.064 did not apply because "there [was] no evidence of mistake here," as plaintiffs "have neither alleged nor presented evidence that they were unaware of the trial court's amount in controversy limits"). While such confusion would be understandable, as other statutory county courts (even those in one county adjacent to Bexar County) [10] have no such restriction, he instead argued that "the amount in controversy should not be calculated by the damages originally sued for, but instead by the amount of damages that, more likely than not, the plaintiff would recover." *Brite I*, 215 S.W.3d at 402. We rejected that argument, concluding that "[t]he amount in controversy in this case exceeded $100,000 at the time Brite filed suit." *Id.* at 403.

The parties disagree about the proper standard for intentional disregard under the tolling statute, which requires that USAA "show[ ] in abatement that the first filing was made with intentional disregard of proper jurisdiction." Tex. Civ. Prac. & Rem.Code § 16.064(b). Brite contends that intent is always a fact issue, inappropriate for resolution on summary judgment, while USAA asserts it has met its burden through circumstantial evidence of Brite's intent and that Brite is charged with knowledge of the law. We have never before addressed this issue.

 We agree, in part, with USAA. Once an adverse party has moved for relief under the "intentional disregard" provision, the nonmovant must show that he did not intentionally disregard proper jurisdiction when filing the case. As it is the nonmovant who has this information, he should bear the burden of producing it. *Cf. Brown v. Shores*, 77 S.W.3d 884, 889

---

**10.** *See* Tex. Gov't Code § 25.1322(a) (providing that county courts at law in Kendall County have concurrent jurisdiction with the district court); *see also* Texas Almanac 2010–11, at 221, 306.

(Tex.App.-Houston [14th Dist.] 2002, no pet.) (Brister, J., concurring) (noting that, because "diligent-service question focuses almost entirely on the efforts and thoughts of plaintiff's counsel, so the initial burden of presenting evidence should rest there, too"; "[o]therwise, every one of these numerous cases will begin with the defendant sending a notice to depose plaintiff's counsel and a subpoena for all files").

We disagree, however, that a plaintiff's mistake about the court's jurisdiction would never satisfy the requirement. Section 16.064's intent standard is similar to that required for setting aside a default judgment, *see Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939) (requiring new trial if defendant proves three elements, the first of which is that default was neither intentional nor due to conscious indifference), and we have held that a mistake of law may be a sufficient excuse, *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex.1992). Moreover, section 16.064 was drafted precisely because "capable lawyers" often make "good faith" mistakes about the jurisdiction of Texas courts. *See* SECOND ANNUAL REPORT, at 11; *see also* CITIZENS' COMMISSION ON THE TEXAS JUDICIAL SYSTEM, REPORT AND RECOMMENDATIONS–INTO THE TWENTY-FIRST CENTURY, at 17 (1993) ("No one person understands or can hope to understand all the nuances and intricacies of Texas' thousands of trial courts.").

But while the tolling statute protects plaintiffs who mistakenly file suit in a forum that lacks jurisdiction, it does not apply to a strategic decision to seek relief from such a court—which is what happened here. *Hotvedt v. Schlumberger, Ltd. (N.V.)*, 942 F.2d 294, 297 (5th Cir. 1991) (refusing to apply section 16.064 because "[i]t is clear ... that errors in [an attorney's] tactical decisions were not meant to be remedied by the savings statute"); *Clary*, 949 S.W.2d at 461 (holding that "[s]ection 16.064 was not intended to remedy ... tactical decisions"); *see also Brite I*, 161 S.W.3d at 586 (Duncan, J., dissenting) (noting that "the record, taken as a whole, establishes that Brite's trial attorney filed the Original Petition with full knowledge that Brite sought far more than $100,000 in actual damages and purposefully drafted the Original Petition to conceal that fact by omitting the statement required by Rule 47(b)"). Because Brite unquestionably sought damages in excess of the county court at law's jurisdiction, it matters not that he subjectively anticipated a verdict within the jurisdictional limits. For that reason, limitations was not tolled. His second suit, filed long after the expiration of the two year statute, is therefore barred.

## V. Is USAA entitled to mandamus relief?

Finally, we must decide whether mandamus relief is appropriate. Deciding whether the benefits of mandamus outweigh the detriments requires us to weigh public and private interests, recognizing that—rather than categorical determinations—"the adequacy of an appeal depends on the facts involved in each case." *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 469 (Tex.2008); *In re The Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136–37 (Tex. 2004).

In *CSR Ltd. v. Link*, 925 S.W.2d 591, 596–97 (Tex.1996), we conditionally granted mandamus relief ordering the trial court to grant CSR's special appearance in a toxic tort case. We held that "extraordinary circumstances" (namely the enormous number of potential claimants and the most efficient use of the state's judicial resources) warranted extraordinary relief, even though it was typically unavailable for the denial of a special appearance.

*CSR,* 925 S.W.2d at 596; *see also Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304, 308–09 (Tex.1994).

And although "mandamus is generally unavailable when a trial court denies summary judgment, no matter how meritorious the motion," that rule is based in part on the fact that "trying a case in which summary judgment would have been appropriate does not mean the case will have to be tried twice"—a justification not applicable here. *In re McAllen Med. Ctr.,* 275 S.W.3d at 465–66. USAA has already endured one trial in a forum that lacked jurisdiction (and then a subsequent appeal to the court of appeals and this Court) and is facing a second trial on a claim that we have just held to be barred by limitations. Two wasted trials are not "[t]he most efficient use of the state's judicial resources." *CSR,* 925 S.W.2d at 596; *cf. In re McAllen Med. Ctr.,* 275 S.W.3d at 466. Denying mandamus relief here would thwart the legislative intent that non-tolled TCHRA claims be brought within two years (as well as the tolling provision's inapplicability to suits filed with intentional disregard of proper jurisdiction), and we should not "frustrate th[at] purpose[ ] by a too-strict application of our own procedural devices." *In re McAllen Med. Ctr.,* 275 S.W.3d at 467.

Because the extraordinary circumstances presented here merit extraordinary relief, we conditionally grant the writ and direct the trial court to grant USAA's motion for summary judgment. We are confident the trial court will comply, and our writ will issue only if it does not.

Justice JOHNSON did not participate in the decision.