# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

September 7, 2011

Mr. Harold E. Feeney, Commissioner
Credit Union Department
914 East Anderson Lane
Austin, Texas 78752-1699

Opinion No. GA-0882

Re: Scope of "enlargement of powers" authority granted state-chartered credit unions in section 123.003(a) of the Finance Code (RQ-0942-GA)

Dear Commissioner Feeney:

You ask several questions about the scope of authority granted to state-chartered credit unions ("SCCU") in section 123.003 of the Finance Code, entitled "Enlargement of Powers."[1] TEX. FIN. CODE ANN. § 123.003 (West 2006). Section 123.003(a) provides that a SCCU "may engage in any activity in which it could engage, exercise any power it could exercise, or make any loan or investment it could make, if it were operating as a federal credit union." *Id.* § 123.003(a). By its terms, section 123.003(a) purports to grant SCCUs parity in some degree with the authority of a federally-chartered credit union. *Id.* You question whether this enlargement of authority effectively exempts SCCUs from otherwise applicable state law.

Your first two questions concern the authority of a SCCU to charge federally-established rates of interest. Request Letter at 2. Finance Code section 124.002 establishes the maximum interest rate that a SCCU may charge on a loan, which cannot exceed: "(1) 1½ percent per month on the unpaid balance; or (2) a higher rate *authorized by law*, including a rate authorized by Chapter 303." TEX. FIN. CODE ANN. § 124.002 (West 2006) (emphasis added). Briefing submitted to this office urges that the parity provisions in section 123.003(a) combine with section 124.002 to allow SCCUs to charge a higher interest rate than is otherwise authorized by general state law, i.e., a higher rate established by federal credit union regulations.[2] However, such a construction of sections 123.003 and 124.002 is legally problematic.

---

[1]*See* Letter from Harold E. Feeney, Commissioner, Credit Union Department, to Honorable Greg Abbott, Attorney General of Texas (Jan. 27, 2011), https://www.oag.state.tx.us/opin/index_rq.shtml ("Request Letter").

[2]Brief from James L. Pledger, Jackson Walker L.L.P., on behalf of the Texas Credit Union League, to Honorable Greg Abbott, Attorney General of Texas at 5 (Mar. 7, 2011) (on file with the Opinion Committee). *See, e.g.,* 12 U.S.C.A. § 1757(5)(A)(vi) (West 2010) (establishing a maximum rate of interest that a federal credit union may charge, but authorizing the National Credit Union Administration Board to establish a higher rate ceiling in certain circumstances).

No court has construed the parity provisions of section 123.003. The statute is located in chapter 123, subchapter A, entitled "General Powers." While statutory headings do not restrict or expand the meaning of a statute's text, nevertheless, they can provide insight into legislative intent. *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 308–09 (Tex. 2010). Consistent with its title, subchapter A contains several general grants of authority but does not mention any specific power, such as the authority to make a loan or the allowable terms of a loan. TEX. FIN. CODE ANN. § 124.001–.003 (West 2006). Like the rest of subsection A, section 123.003 is a general statement of a state chartered credit union's powers, which should not be read in a way that renders superfluous the numerous grants of specific power in other statutes. *Cf. City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29–30 (Tex. 2003) (refusing to construe general grant of control of roads to county commissioners court so broadly that it renders specific grants of authority unnecessary).

In contrast, Finance Code section 124.002 is a specific statute establishing a numerical maximum interest rate, 1½ percent per month, that a SCCU may charge on a loan. TEX. FIN. CODE ANN. § 124.002(1) (West 2006). The statute also allows "a higher rate authorized by law, including a rate authorized by Chapter 303." *Id.* § 124.002(2). While the statute does not elaborate about what might constitute "a higher rate authorized by law," the example it gives, chapter 303, likewise contains specific provisions for optional interest rate ceilings applicable to a SCCU. *Id.* §§ 303.001–.502 (West 2006 & Supp. 2010). In context, "a higher rate authorized by law" refers to specific state laws governing a SCCU's interest rates, not a federal law governing federally-chartered credit unions. Because section 124.002 deals specifically with maximum interest rates, the general parity provision of section 123.003 should not be construed to prevail over section 124.002. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 901 (Tex. 2000) (recognizing "the traditional statutory construction principle that the more specific statute controls over the more general"); TEX. GOV'T CODE ANN. § 311.026 (a) (West 2005) (providing that conflicting general and special provisions "shall be construed, if possible, so that effect is given to both"). Accordingly, we do not construe section 123.003(a) as authorizing a state chartered credit union to charge a federally-established rate of interest if it is a higher rate than section 124.002(a) allows.

We also note that the establishment of maximum interest rates in Texas is an express constitutional duty of the Legislature. TEX. CONST. art. XVI, § 11. We do not construe section 123.003 as overriding the specific maximum rates set by section 124.002. Such a construction, arguably, would be tantamount to a delegation to federal regulators of the Legislature's constitutional duty. *See* Tex. Att'y Gen. Op. No. MW-281 (1980) at 1–2 (concluding that the predecessor of section 123.003 should not be construed as authorizing the commissioner to adopt federally-established interest rates, in part because of the Legislature's constitutional duty to establish maximum interest rates). Courts are inclined to give statutes a construction that avoids a constitutional delegation question, and we do so here. *See Ex parte Elliott*, 973 S.W.2d 737, 741 (Tex. App.—Austin 1998, pet. ref'd) (rejecting a construction of a statute as delegating to a federal agency the authority to define Texas law because it would raise constitutional issues).

You also ask broadly whether the activities authorized in section 123.003 are "limited by the laws of this State," or can be limited by commissioner action or commission rule. Request Letter at 2. We are unable to determine in the abstract how either subsection may or may not be "limited"

by other state laws. Such a determination would require analyzing the potentially conflicting statutes separately to determine if they can be harmonized and, if not, which prevails. *See* TEX. GOV'T CODE ANN. § 311.025 (West 2005) (rules for construing potentially irreconcilable statutes); *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 311 (Tex. 2010) (courts attempt to harmonize relevant statutes to the extent possible).

Likewise, we are unable to advise in the abstract the extent to which section 123.003(a) might be limited by action of the commissioner or by commission rule. The commissioner is authorized to "supervise and regulate a credit union doing business in this state, other than a federal credit union, in accordance with" statutes and rules governing credit unions. TEX. FIN. CODE ANN. § 15.403 (West Supp. 2010); *see also id.* § 15.402 (commission rule- making authority). The statutes are expressly intended to provide "rulemaking and discretionary authority" to assure that credit unions can respond to changes in economic conditions and practices while maintaining fiscal responsibility, among other purposes. *Id.* § 121.0011 (West 2006). We answer your broad questions by advising that the commissioner and commission rules may limit activities authorized under section 123.003 as reasonably necessary to the exercise of their express authority and for the purposes set forth in section 121.0011.

You next ask whether, if section 123.003 permits a SCCU to make loans pursuant to a particular federal loan regulation, the commissioner is able to enforce any restrictions contained in the federal regulation. Request Letter at 2. Section 123.003(a) grants only the authority to engage in an activity, exercise a power, or make a loan or transaction as if the state-chartered credit union were a federal credit union. Consequently, the commissioner may enforce a restriction to the extent necessary to the commissioner's state-law authority to supervise and regulate SCCUs. *See* TEX. FIN. CODE ANN. § 15.403 (West Supp. 2010).

Finally, you ask whether the authority granted under section 123.003 is determined by reference to federal statutes and regulations that existed when the section was adopted or by federal standards as they may change over time. Request Letter at 2. Section 123.003(a) indicates that a SCCU's authority is determined by law applicable to a federal credit union at the time the credit union engages in an activity, exercises a power, or makes a loan or transaction. Had the Legislature intended to limit the authorization to existing federal regulations, the Legislature could have easily inserted language to specifically impose that limitation. *See, e.g.*, TEX. LOC. GOV'T CODE ANN. § 214.212(a) (West 2008) (providing that "the International Residential Code, as it existed on May 1, 2001, is adopted as a municipal residential building code in this state"). Assuming that a court does not give section 123.003 a more limited reading,[3] the statute provides that a SCCU's authority is determined by reference to law applicable to a federal credit union at the time of the exercise of that authority.

---

[3] In *Ex parte Elliott*, the court opined that if a statute is construed to delegate authority to a federal agency to define Texas law, "and that definition may change from time to time at the will of the [federal agency], without intervention by or guidance from the legislature[, s]uch a construction would in fact place in doubt the constitutionality" of the statute. *Ex parte Elliott*, 973 S.W.2d 737, 741 (Tex. App.—Austin 1998, pet. ref'd). To avoid the potential constitutional infirmity, the court construed the statute as adopting the federal definition only as it stood when the state statute was enacted. *Id.* at 742.

## S U M M A R Y

Section 124.002 of the Texas Finance Code specifically limits rates of interest that state-chartered credit unions can charge their members. Accordingly, the general authority granted by section 123.003(a) of the Texas Finance Code does not authorize a state chartered credit union to charge a federally-established rate of interest if the federal rate is higher than the maximum rate established and authorized by section 124.002. As a general proposition, the commissioner or a commission rule may limit credit unions' financial activities under section 123.003 to the extent that prohibiting those financial activities may be reasonably necessary to exercise the commission's express authority and the purposes set forth in section 121.0011 of the Finance Code.

The commissioner may enforce a restriction associated with activities authorized by section 123.003 to the extent that it is necessary for the commissioner to supervise and regulate state-chartered credit unions. Although a court could give section 123.003 a more limited reading, this provision of the Finance Code provides that a state-chartered credit union's authority is determined by reference to federal regulations governing federal credit unions at the time the state-chartered credit union exercises that authority—not federal regulations at the time section 123.003 was enacted.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

JASON BOATRIGHT
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee